UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SAMUEL JAMES MORALES,**

      **Petitioner,**

**v.**                                    **Case No. 8:21-cv-1846-MSS-TGW**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## O R D E R

Morales petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for sexual battery. After reviewing the petition (Doc. 1), the response (Doc. 7), the reply (Doc. 12), and the relevant state court record, the Court **DENIES** the petition.

## PROCEDURAL HISTORY

A jury found Morales guilty of sexual battery and lewd and lascivious battery (Doc. 7-2 at 936–37), the trial court granted the prosecutor's motion to dismiss the lewd and lascivious battery conviction (Doc. 7-2 at 961), and the trial court sentenced Morales to thirteen years in prison for the sexual battery conviction. (Doc. 7-2 at 967–70) Morales appealed, and the state appellate court affirmed. (Doc. 7-2 at 1024)

Morales moved for post-conviction relief. (Doc. 7-2 at 1070–93) The post-conviction court denied relief after an evidentiary hearing. (Doc. 7-2 at 1798–1813) Morales appealed, and the state appellate court affirmed. (Doc. 7-2 at 2203) Also, Morales filed a petition

alleging ineffective assistance of appellate counsel, and the state appellate court denied relief. (Doc. 7-2 at 2209–14, 2231) Morales's federal petition follows.

## FACTS

An information charged Morales with sexual battery by placing his penis into, or in union with, A.D.'s vagina, without the consent of A.D. (Doc. 7-2 at 43)

On October 31, 2010, A.D., who was thirteen, went to the mall with a friend and met other teenagers, including A.D.'s boyfriend and Morales, who was nineteen. (Doc. 7-2 at 407–08) The group of teenagers spent a couple of hours at the mall and walked around downtown Saint Petersburg. (Doc. 7-2 at 409–10) After learning that Morales sold drugs, A.D. consumed a Xanax pill that she bought from Morales. (Doc. 7-2 at 411) Also, the group of teenagers drank vodka from a large bottle that Morales kept in his backpack. (Doc. 7-2 at 411) Consuming the vodka with the Xanax pill caused A.D. to become intoxicated. (Doc. 7-2 at 414)

A.D. refused a ride home from her boyfriend's mother because A.D.'s parents, who did not know that A.D. went downtown, expected her to return home much later that night. (Doc. 7-2 at 414) About five minutes later, another male friend, who described A.D. as "very drunk," left. (Doc. 7-2 at 472) A.D. remained alone with Morales, who insisted that A.D. finish a small amount of vodka that remained in the bottle and who promised that he would arrange a ride for them. (Doc. 7-2 at 416)

A.D.'s intoxication impaired her memory of the rest of the evening. (Doc. 7-2 at 416–17) She remembered that Morales pushed her against a fence, pressed up against her, and groped her breasts and vagina over her clothes. (Doc. 7-2 at 417–18) She remembered that she responded by telling Morales to stop, that she sat alone on the ground by the fence

with her pants and underwear pulled down around one ankle, and that she stood up, pulled up her underwear and pants, and wiped dirt and grass off her back. (Doc. 7-2 at 417–19) Also, she remembered that she sat on the ground at a gas station and that a police officer arrived and drove her home where she fell asleep wearing her clothes. (Doc. 7-2 at 419–20)

The next evening, A.D. contacted the police after her friend observed bruises on A.D.'s arms, thighs, and knees. (Doc. 7-2 at 422) A forensic technician photographed bruises on A.D.'s body and collected the underwear that A.D. wore when she was left alone with Morales. (Doc. 7-2 at 422–26, 428–29, 508–10) On cross-examination, A.D. testified that, several days after the evening with Morales, she spoke to police officers, her mother, and a nurse but did not remember what she told them because at the time she continued to feel impaired by the Xanax and alcohol. (Doc. 7-2 at 453–60)

A forensic analyst identified semen in a stain on the crotch of A.D.'s underwear, extracted DNA from the semen stain, and determined that Morales's DNA matched the DNA from the semen stain. (Doc. 7-2 at 683–85) The analyst identified fourteen out of fifteen locations on the DNA profile from the semen stain, discovered that the remaining fifteenth location was degraded and statistically insignificant, and determined that Morales's DNA matched the remaining identifiable fourteen locations. (Doc. 7-2 at 686–87) The analyst determined that the probability of identifying another person with the same profile was one in 3.8 quadrillion in the Hispanic population. (Doc. 7-2 at 689)

A police officer testified that, just before midnight on October 31, 2010, he responded to a call at the gas station. (Doc. 7-2 at 485–86) The officer spoke to both Morales and A.D. and became concerned that A.D., who was thirteen, was intoxicated and alone with Morales, who was nineteen. (Doc. 7-2 at 487–88, 490) A.D. acted defensively and told the officer that

3

she had consumed a Xanax pill and had drunk only a few sips from a can of a malt beverage. (Doc. 7-2 at 488–90) The officer asked A.D. if Morales had acted inappropriately toward her, and A.D. denied that Morales had acted inappropriately. (Doc. 7-2 at 490–91)

The prosecutor introduced into evidence a recording of a jail telephone call between a female and Morales. During the telephone call, Morales stated that he "got arrested for something [he] didn't even know [he] was going to be arrested for." (Doc. 7-2 at 657) He further stated that "[t]hey said I was somewhere on Halloween and did something to somebody when I wasn't there," and "that they have DNA evidence, which is odd, because I wasn't there." (Doc. 7-2 at 657)

During the defense's case, a nurse testified that she observed bruising on the inside of A.D.'s thighs but did not observe bruising around A.D.'s vagina. (Doc. 7-2 at 550–53, 557, 561) A.D. told the nurse that she had consumed alcohol and Xanax, touched Morales's penis over his pants in a bathroom at the gas station, and did not remember other details from the evening. (Doc. 7-2 at 549–50)

A police officer testified that, on November 2, 2010, he met with A.D. and A.D.'s father at their home. (Doc. 7-2 at 736) A.D. told the officer that, on October 31, 2010, she, Morales, and another male walked to the gas station. (Doc. 7-2 at 737–38) A.D., who was timid and upset, did not tell the officer that Morales groped her or pushed her into a fence and stated that she could not remember what happened. (Doc. 7-2 at 738–39, 742–43)

A detective testified that, a few days later, she interviewed A.D., and A.D. could not remember many details from the evening but told the detective that she went to the gas station with her male friend named Jack. (Doc. 7-2 at 749, 754, 757) A.D. stated that Morales followed her into the restroom at the gas station and groped her breasts and vagina over her

clothing. (Doc. 7-2 at 752–53) Also, A.D. stated that Morales pushed her up against a fence and groped her again, but A.D. could not remember exactly what happened. (Doc. 7-2 at 755–56) About a week later, the detective interviewed A.D. a second time. (Doc. 7-2 at 757) A.D. stated that Morales acted aggressively toward her and repeatedly asked her to drink alcohol. (Doc. 7-2 at 758)

A toxicologist testified that she examined a urine sample that A.D. provided three days after the crimes. (Doc. 7-2 at 604, 610) The toxicologist did not detect alprazolam, the active ingredient in Xanax. (Doc. 7-2 at 606, 611) The toxicologist opined that she would expect to detect Xanax in urine if the person claimed that she continued to experience the effects of the drug two or three days later. (Doc. 7-2 at 611–12) The toxicologist's testimony rebutted A.D.'s testimony that she did not remember what she told police officers, her mother, and the nurse several days after the crimes due to any continued impairment from Xanax and alcohol. (Doc. 7-2 at 453–60)

## STANDARDS OF REVIEW

**AEDPA**

Because Morales filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the
> United States; or
>
> (2)   resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to a holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Morales asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requires a defendant to demonstrate both deficient performance and prejudice:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"[T]here is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally defaulted. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Also, a petitioner's failure to

comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

**Ground One**

Morales asserts that police violated his federal constitutional rights by arresting him without probable cause. (Doc. 1-1 at 6–7) He alleges that police identified him as a suspect by matching DNA from the semen stain on A.D.'s underwear with his DNA in a database. (Doc. 1-1 at 6) He alleges that police placed his DNA in the database during an earlier unrelated criminal case. (Doc. 1-1 at 6) He alleges that the prosecutor dismissed the earlier unrelated criminal case because police unlawfully arrested him in that case. (Doc. 1-1 at 6) He asserts that police therefore unlawfully relied on his DNA in the database to identify him as a suspect in this case. (Doc. 1-1 at 6) He asserts that, without the DNA match, police lacked probable cause to arrest him in this case. (Doc. 1-1 at 6–7)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 7 at 16) In his brief on direct appeal, Morales failed to raise the claim. (Doc. 7-2 at 977–1008) On appeal, Morales asserted that the trial court erred by denying his motion for

judgment of acquittal. (Doc. 7-2 at 1001–07) Because Morales failed to present the claim on direct appeal, he failed to exhaust his remedies in state court. *O'Sullivan*, 526 U.S. at 845.

If Morales returned to state court to exhaust his remedies, the post-conviction court would deny the claim as untimely and procedurally defaulted. Fla. R. Crim. P. 3.850(b), (c). Consequently, the claim is procedurally defaulted on federal habeas. *Snowden*, 135 F.3d at 736.

Morales asserts that ineffective assistance of appellate counsel serves as cause to excuse the procedural default. (Doc. 1 at 6) *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Morales exhausted the ineffective assistance of appellate counsel claim by raising the claim in a timely petition alleging ineffective assistance of appellate counsel. (Doc. 7-2 at 2211–12) *Ledford v. Warden, Ga. Diag. Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020) ("Before a habeas petitioner can rely on an allegation of ineffective assistance of counsel to demonstrate cause to excuse a procedural default, he must show that he properly raised the argument in state court, because ineffective assistance is itself a constitutional claim.") (citing *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)).

Because trial counsel failed to preserve the issue for review on appeal by moving to suppress Morales's arrest before trial, appellate counsel would have to demonstrate fundamental error. § 924.051(3), Fla. Stat. "Fundamental error is error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Prado v. State*, 372 So. 3d 272, 275 (Fla. 4th DCA 2023) (quoting *Gentry v. State*, 300 So. 3d 233, 237 (Fla. 4th DCA 2020)).

On December 3, 2012, police arrested Morales. (Doc. 7-2 at 13) Before Morales's arrest, police interviewed A.D. and collected her underwear, a nurse examined A.D.,

observed bruises on her thighs, and collected a buccal swab and blood and urine samples from her, and a DNA analyst identified semen in the crotch of her underwear.

After Morales's arrest, the prosecutor moved to compel Morales to provide a buccal swab (Doc. 7-2 at 19–20) Trial counsel objected, arguing that probable cause did not support the request because A.D. provided inconsistent statements about what happened, surveillance video contradicted A.D.'s statements to police, the prosecutor presented no credible theory to explain why semen appeared in A.D.'s underwear, and compelling Morales to provide a buccal swab violated his federal right against self-incrimination. (Doc. 7-2 at 27–29)

The trial judge responded as follows (Doc. 7-2 at 32–34):

> [Trial court:]  If you're asking for an evidentiary hearing on this, which nobody has ever asked for, you can ask for that. That will not help you try to get it worked out with the State.
>
> I can't just — I mean, if you're saying the allegations in here aren't true and you want to have a full evidentiary hearing on this, I will give you a full evidentiary hearing. You are just making your points for the record, which is fine.
>
> I was, respectfully, pretty amazed that this was something you were debating at all, but you may do that. No, I can't take as evidence allegations in a motion if you're going to say they're not true.
>
> I think — what I was trying to point out is the last time you said they couldn't use it and he was all annoyed because of this other case that was dropped. Well, to me, if he is connected by her saying it's him, by him being in the video, by other people saying it was him, or even any number of them, any one or two of those things, and

there's semen in underwear, I would always grant the motion. It doesn't matter if he was previously a match. That has nothing to do with it to me. It's in this case.

And, you know, this is probably the first one of these you've had. And I respect that you're trying to do a good job for your client and you're just trying to make a record so that maybe if I'm wrong that would be a reversal. And I understand. And when I did your job, that's what I did, too.

Now, I can't pretend that what either one of you is saying is evidence. So, if you're making your legal objections, I'm ready to rule on this.

If you're saying I want an evidentiary hearing — I have never in fifteen years needed to have one on here, but I'm not telling you, you can't have one if that's what you ask for. But then I don't think that's going to help you with your other issue of trying to do anything with working it out. But I don't care. I don't mean work it out with me. I mean work it out with the State.

So, to me, if there's a video that shows him in it at or around the time this happened and the victim, drunk or not, says it was him, whether there's any other witnesses or not, if there's semen on the underwear, I'm going to let a buccal swab be taken separate and apart from any other case that he had. And I'm not ruling based on any other case that he had.

If that clarification on my part makes it easier for you to determine how you want to go forward, that's fine with me.

The trial court granted the motion for a buccal swab as follows (Doc. 7-2 at 36–37):

[Trial court:]           All right. So, thank you for the legal argument on the motion to compel a buccal swab.

Based on the argument held at the bench, I am going to find that a video at [or] around the time this happened, with the defendant appearing in the video at the place, the location — I don't know, bathroom, outside, where — but 2749 Ninth Avenue North, and the semen found in the victim's underwear, and the victim saying it was the defendant is sufficient probable cause to grant this swab.

Now, previously we talked about there was some other arrest for [sexual] battery or [lewd and lascivious battery] or something that he had that was dropped. And in the result of that case, they had his DNA and that was a match for these underpants, semen.

I don't — I'm not considering that. To me, that's not — on the legal issue of whether I grant this motion, the prior match in a case where maybe they should or should not have taken it — I have no clue — is not going to matter to me. I'm doing it based only on the facts of this case.

So, the prior match I'm just setting aside and saying if there had been no prior match, I would grant it based on the video, the victim's statement, the semen in the underwear. So, I just wanted to be clear in my ruling. I'm granting the motion to compel the buccal swab.

The DNA analyst obtained a DNA profile for Morales from the new buccal swab and matched Morales's DNA from the new buccal swab with the DNA from the semen in A.D.'s underwear. (Doc. 7-2 at 633–35, 638–40, 681–82, 688) Because the prosecutor did

not introduce into evidence at trial the allegedly tainted DNA in the database, and the DNA analyst, who testified at trial, did not rely on the allegedly tainted DNA in the database to match the DNA on A.D.'s underwear with Morales's DNA, Morales cannot demonstrate that any error "'reach[ed] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Prado*, 372 So. 3d at 275 (citation omitted).

Also, Morales asserts that police unlawfully arrested him in this case because the arrest affidavit relied on a match between his allegedly tainted DNA in the database and the DNA on A.D.'s underwear. (Doc. 1-1 at 6–7) The arrest affidavit in this case established probable cause as follows (Doc. 7-2 at 13):

> On October 31, 2010, Halloween night, between 10:00 P.M. and midnight, the defendant, a then nineteen-year-old male, committed a lewd and lascivious battery upon on a thirteen-year-old female victim. Probable cause for the defendant's arrest is based on the victim's statement to the police, and DNA evidence found in the victim's purple underpants, to wit: DNA analysis of a sperm fraction in the victim's underpants resulted in a CODIS hit of the DNA profile belonging to the defendant.

Even if police unlawfully arrested Morales in this case, which the Court need not decide, "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). An unlawful arrest requires only suppression of a fruit of the unlawful arrest. *Segura v. United States*, 468 U.S. 796, 804 (1984) ("Under this Court's holdings, the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'") (citations omitted).

*Before* Morales's arrest, police obtained A.D.'s statements, her underwear, the semen identified on her underwear, the DNA from the semen, and the nurse's observations of A.D. Consequently, that evidence does not derive from Morales's allegedly unlawful arrest.

Also, over four months after Morales's arrest, police obtained the new buccal swab from Morales after the trial judge granted the prosecutor's motion to compel, and the DNA analyst obtained Morales's DNA from the new buccal swab. When granting the motion to compel, the trial judge refused to consider any match based on the allegedly tainted DNA in the database and only relied on surveillance video depicting Morales at the crime scene, the DNA analyst's identification of semen on A.D.'s underwear, and A.D.'s statement identifying Morales as the perpetrator. Because the new buccal swab, authorized by the trial judge, was sufficiently attenuated from any allegedly unlawful arrest, the new buccal swab was not a suppressible fruit of Morales's arrest. *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (authorizing the admission of evidence under the attenuation doctrine "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'") (quoting *Hudson v. Michigan*, 547 U.S. 586, 593 (2006)); *United States v. Smith*, 688 F.3d 730, 738 (11th Cir. 2012) ("[A]ttenuation occurs when the causal connection is remote and 'when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'") (quoting *Hudson*, 547 U.S. at 593)).

Because appellate counsel could not demonstrate on direct appeal that "a verdict of guilty could not have been obtained without the assistance of the alleged [unlawful arrest],'"

appellate counsel did not deficiently perform. *Prado*, 372 So. 3d at 275. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Reed v. State*, 837 So. 2d 366, 370 (Fla. 2002) ("By its very nature, fundamental error has to be considered harmful. If the error was not harmful, it would not meet our requirement for being fundamental.").

Because the issue on appeal would not succeed, Morales cannot demonstrate that ineffective assistance of appellate counsel serves as cause to excuse the procedural default. Consequently, the claim in Ground One is procedurally barred.

Ground One is **DISMISSED** as procedurally barred.

**Ground Two**

Morales asserts that his conviction violates federal due process because the prosecutor failed to prove that he sexually battered A.D. without her consent. (Doc. 1-1 at 7–9) The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 7 at 18–19) In his brief on direct appeal, Morales asserted that the trial court erred by denying his motion for judgment of acquittal. (Doc. 7-2 at 1001–07) However, he argued that the prosecutor failed to rebut his reasonable hypothesis of innocence as follows. (Doc. 7-2 at 1005–07):

> [T]he evidence adduced at trial is insufficient to sustain this conviction. The testimony from [A.D.] was that she groped [Morales] through his clothes and that he groped her through her clothing. She also testified that [Morales] pushed her against the fence and groped her. A.D. also testified that at some point she was on the ground [and] that her pants were pulled down. Seminal fluid was found two days later on A.D.'s panties and the DNA analysis linked it to [Morales].

16

The State's argument was the semen "fell" out of the vagina of [A.D.] and landed in her panties. Certainly, that is a possibility. However, a possibility is not evidence beyond a reasonable doubt.

A variety of scenarios could explain the presence of the semen. [Morales] could have masturbated over A.D. when she was passed out on the ground. A.D. could have caused [Morales] to ejaculate through his clothing and onto her panties. A.D. could have manually stimulated [Morales] to the point of ejaculation. Any of these scenarios are equally possible. They are as likely as the State's scenario. And, also like the State's theory of the case, they are unable to be substantiated by proof beyond a reasonable doubt. A.D. testified that her memory was foggy and she could not remember what happened. However, it should be noted that she did provide false testimony during the investigation of the case.

In order to sustain the conviction, each element of the offense must be proved beyond a reasonable doubt. There is absolutely no evidence to establish that penetration occurred or that there was union with [Morales's] penis.

Because Morales failed to present the claim based on the lack of evidence of consent on direct appeal, he failed to exhaust his remedies in state court. *O'Sullivan*, 526 U.S. at 845.

If Morales returned to state court to raise the claim, the post-conviction court would deny the claim as untimely and procedurally defaulted. Fla. R. Crim. P. 3.850(b), (c). Consequently, the claim is procedurally defaulted on federal habeas. *Snowden*, 135 F.3d at 736. Morales asserts that ineffective assistance of appellate counsel serves as cause to excuse the procedural default. (Doc. 1 at 7) Morales exhausted the ineffective assistance of appellate counsel claim by raising the claim in a timely petition alleging ineffective assistance of appellate counsel. (Doc. 7-2 at 2213–14) *Ledford*, 975 F.3d at 1161. Because trial counsel failed to preserve the issue for review on appeal when moving for a judgment of acquittal (Doc. 7-2 at 704, 768–71, 773–92), appellate counsel would have to demonstrate fundamental error. § 924.051(3), Fla. Stat. Under Florida law, "[f]undamental error occurs

'when the evidence is insufficient to show that a crime was committed at all.'" *Godbolt v. State*, 319 So. 3d 773, 775 (Fla. 1st DCA 2021) (quoting *F.B. v. State*, 852 So. 2d 226, 230 (Fla. 2003)).

The amended information charged Morales with sexual battery under § 794.011(5), Florida Statutes (Doc. 7-2 at 43), the jury found him guilty of sexual battery as charged in the amended information (Doc. 7-2 at 937), and the trial court entered a judgment for the conviction for sexual battery. (Doc. 7-2 at 967–70) Sexual battery requires proof that a defendant engaged in sexual activity without the victim's consent. § 794.011(5)(a), Fla. Stat. ("A person eighteen years of age or older who commits sexual battery upon a person twelve years of age or older but younger than eighteen years of age, without that person's consent, and in the process does not use physical force and violence likely to cause serious personal injury commits a felony of the first degree . . . .").

A.D. testified that, on the evening of the crime, she consumed Xanax and alcohol that Morales provided to her. (Doc. 7-2 at 411, 414) A.D.'s intoxication affected her ability to remember what occurred that evening. (Doc. 7-2 at 414, 416) A.D. remembered that she told Morales to stop when he pushed her up against a fence and groped her breasts and vagina (Doc. 7-2 at 417):

> [Prosecutor:]  Go ahead. What's the next thing that you remember?
>
> [A.D.:]  The next point that I remember is being, like, along the fence and [Morales] being pressed on top of me, and, like, trying to grope me, and being pushed up on a fence, and me, like, you know, "My boyfriend. Can you not," — like, "Can you stop doing this?"

|  | And then at that point, I don't really remember much after that, but then I remember being on the ground and — |
|---|---|
| [Prosecutor:] | Okay. I want to slow you down just a little bit, okay? So, you remember walking, and then you remember being up against the fence? |
| [A.D.:] | Yes. |
| [Prosecutor:] | And how did you get up against the fence? |
| [A.D.:] | [Morales] was in front of me on the fence. |
| [Prosecutor:] | And you said you remember him groping you. What was he touching? |
| [A.D.:] | He was touching my chest area and my genital area. |
| [Prosecutor:] | Do you remember if he was touching you over the clothes or under the clothes? |
| [A.D.:] | I only remember being touched over my clothes. |
| [Prosecutor:] | Was he touching your breast area over the clothes? |
| [A.D.:] | From what I remembered, yes. |
| [Prosecutor:] | And what about your genital area? |
| [A.D.:] | Also the same thing, I remember. |
| [Prosecutor:] | Over the clothes? |
| [A.D.:] | Uh-huh. |

A.D. remembered sitting on the ground by herself next to the fence with her pants and underwear pulled down to her ankles (Doc. 7-2 at 418–19):

| [Prosecutor:] | And what is then the next thing that you remember? |
|---|---|

19

| | |
|---|---|
| [A.D.:] | The next thing I remember is being on the ground by myself, and trying to stand up, and pulling my pants up, and wiping, like dirt and grass off my back and stuff. |
| [Prosecutor:] | Okay. Are you still on the ground right by the fence? |
| [A.D.:] | Yes. |
| [Prosecutor:] | And when you say you pull your pants up — when you woke up and you're on the ground, where were your — [were] your pants and your underwear down? |
| [A.D.:] | Like, around one of my legs. |
| [Prosecutor:] | Were they off your body, ever? |
| [A.D.:] | They were never off my body. |
| [Prosecutor:] | And did you have shoes on? |
| [A.D.:] | Yes, I had shoes on. |
| [Prosecutor:] | So your shoes had never come off your body? |
| [A.D.:] | My shoes had never come off my body. |
| [Prosecutor:] | And your shorts and underwear were still on your body? |
| [A.D.:] | Yes. |
| [Prosecutor:] | Just pulled down from where they had been covering your vaginal area? |
| [A.D.:] | Yes. |
| [Prosecutor:] | And you said you're alone at that point, so you pull your pants up, and you brush your — the dirt off? |
| [A.D.:] | Uh-huh. |

20

Because A.D. testified that she told Morales to stop when he groped her breasts and vagina, the prosecutor sufficiently proved that Morales sexually battered A.D. without her consent. § 794.011(1)(a), Fla. Stat. ("'Consent' means intelligent, knowing, and voluntary consent and does not include coerced submission. 'Consent' shall not be deemed or construed to mean the failure by the alleged victim to offer physical resistance to the offender."). *Statler v. State*, 349 So. 3d 873, 880 (Fla. 2022) ("Because the existence or absence of consent is an objective determination to be made from facts observable by a reasonable person, the jury's finding must turn on what the complainant said and did.").[1]

Also, the information charged Morales with lewd and lascivious battery, alleging that Morales engaged in sexual activity with A.D., who was older than twelve but less than sixteen, in violation of Section 800.04(4)(a), Florida Statutes. (Doc. 7-2 at 15) Lewd and lascivious battery is a permissive lesser included offense of sexual battery. Fla. Std. (Crim.) Jury Instr. 11.4. "Neither the victim's lack of chastity nor the victim's consent is a defense to [lewd and lascivious battery]." § 800.04(2), Fla. Stat. Because the evidence proved that Morales committed a lewd and lascivious battery, even without proof of lack of consent, appellate counsel could not demonstrate fundamental error on appeal. *H.R. v. State*, 298 So. 3d 1217, 1224 (Fla. 3d DCA 2020) ("[T]he fundamental error exception does not permit appellate review of unpreserved error in the State's evidentiary failure to prove the crime/delinquent act unless the evidence failed to establish the commission of *any* crime/delinquent act whatsoever.") (italics in original).

---

[1] *See Coley v. State*, 616 So. 2d 1017, 1023 (Fla. 3d DCA 1993) ("The prevailing view is that voluntary consumption of drugs or alcohol does not, without more, render consent involuntary.").

Because the issue on appeal would not succeed, Morales cannot demonstrate that ineffective assistance of appellate counsel serves as cause to excuse the procedural default. Consequently, the claim in Ground Two is procedurally barred.

Ground Two is **DISMISSED** as procedurally barred.

**Ground Three**

Morales asserts sixteen ineffective assistance of trial counsel claims. The Court addresses each claim as follows.

**Sub-claim A**

Morales asserts that trial counsel deficiently performed by not investigating his case and demonstrating Morales's innocence at the hearing on the prosecutor's motion to compel a buccal swab. (Doc. 1-1 at 9–11) He contends that trial counsel would have discovered that (1) "[the] CODIS hit stemmed from an unlawful arrest," (2) A.D. denied to a police officer that Morales had acted inappropriately toward her, (3) police officers stated in reports that a rape kit neither revealed any evidence supporting guilt nor demonstrated probable cause for his arrest, (4) no person, including A.D., stated that Morales raped A.D., (5) video surveillance proved that Morales never entered the bathroom of the gas station where the prosecutor alleged that the crime occurred, and (6) the evidence proved only Morales's presence at the gas station. (Doc. 1-1 at 9–11)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1127–28) (state court record citations omitted):

> Defendant alleges that counsel was ineffective for failing properly argue against the State's motion to compel a buccal swab. Specifically, Defendant claims that counsel should have discovered that his DNA profile, previously stored in the Combined DNA Index System (CODIS), was illegally obtained without his consent and did not result in a conviction.

Defendant contends, therefore, that counsel should have argued at the motion hearing that the court should not consider the fact that his DNA profile taken in the instant case matched with the prior CODIS profile which was illegally obtained. Defendant further claims that counsel was ineffective for failing to argue that the victim initially told police that nothing happened, was unable to completely recall the incident, and had stated that [she] believed the incident occurred in the convenience store bathroom. Defendant contends that the victim's testimony conflicts with the convenience store surveillance video, which does not depict Defendant entering the store's bathroom where he could have battered the victim. Defendant contends that, if counsel had made all these arguments at the hearing on the motion to compel a buccal swab, the court would have denied the motion and the State would not have been able to match his DNA to the DNA contained on the victim's underwear. The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.

[The claim] is entirely refuted by the record. At a hearing on the State's motion to compel a buccal swab, counsel actually argued each point that Defendant claims counsel failed to argue. First, counsel argued that there was no probable cause to compel the buccal swab or support the State's charges. Second, counsel conveyed to the court that he objected to the State's use of the CODIS match because the court noted that it did not consider the prior match in its decision to grant the motion. Third, counsel argued that the victim initially told police that nothing happened, then argued that the victim's statement that the Defendant assaulted her in the convenience store bathroom was inconsistent with the store's surveillance, which did not show the Defendant entering the store. Counsel cannot possibly be ineffective for actually raising the arguments that Defendant claims he did not raise. Therefore, [the claim] fails the first prong of *Strickland*. Furthermore, because the record reflects that counsel did actually argue all the points Defendant claims counsel failed to argue, Defendant cannot prove that there is a reasonable probability that the outcome of trial would have been different. *See Haliburton*, 691 So. 2d at 470[ ]. Therefore, [the claim] also fails the second prong of *Strickland*, and [the claim] is denied.

To the extent that Defendant seems to claim that the existing CODIS profile and match somehow subconsciously compelled the court to grant the State's motion to compel a buccal swab, the claim is entirely speculative and refuted by the record. The

court explicitly refused to consider Defendant's CODIS match in deciding whether to grant the motion to compel. Thus, Defendant cannot prove that he was prejudiced by the prior DNA sample which was allegedly procured and stored in CODIS illegally.[2]

[2] Although the legality of the prior CODIS DNA sample is not at issue in this motion, Defendant may wish to note that, even if a DNA sample stored in CODIS was obtained illegally, the exclusionary rule does not preclude admission of a DNA match using a subsequent, legally-obtained DNA sample. *See United States v. Thomas*, 736 F.3d 54, 66 (1st Cir. 2013).

Because the post-conviction court accurately summarized the arguments that trial counsel presented at the hearing on the prosecutor's motion to compel the buccal swab (Doc. 7-2 at 1152–54, 1156–57, 1159), and Morales fails to demonstrate with clear and convincing evidence that the summary is erroneous, the post-conviction court did not unreasonably determine that the record refuted the claim. 28 U.S.C. § 2254(d)(2) and (e)(1).

Also, as explained in the ruling on Ground One, the trial court refused to consider the DNA match based on Morales's DNA in the CODIS database when ruling on the prosecutor's motion to compel the buccal swab. (Doc. 7-2 at 1161–62) Because the video surveillance, A.D.'s accusation, and the semen found in A.D.'s underwear demonstrated a reasonable probability that DNA testing on the buccal swab would lead to incriminating evidence, and the intrusion caused by a buccal swab was minimal, an expanded objection to the prosecutor's motion for the swab would not have succeeded. Consequently, trial counsel did not deficiently perform, and the post-conviction court did not unreasonably deny the claim. *Winston v. Lee*, 470 U.S. 753, 758–63 (1985) (quoting *Schmerber v. California*, 384 U.S. 757 (1966)). *Green v. Nelson*, 595 F.3d 1245, 1252 (11th Cir. 2010) ("Considering the affidavit with these facts only — including that Green raped Pollard and that Pollard

positively identified Green as her attacker — we find probable cause existed to obtain a search warrant for Green's blood and DNA evidence.").

Sub-claim A is **DENIED**.

**Sub-claim B**

Morales asserts that trial counsel deficiently performed by not moving to suppress the buccal swab. (Doc. 1-1 at 11–12) The post-conviction court denied the claim as follows (Doc. 7-2 at 1129–28) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to file a motion to suppress DNA evidence obtained from a buccal swab. Defendant seems to allege that counsel should have filed a motion to suppress based on the fact that there was no probable cause to support the search. In order to establish a claim for ineffective assistance of counsel based on the failure to file a motion to suppress, a defendant must allege and prove that counsel knew a valid basis existed to suppress the relevant evidence, yet failed to do so. *See Harrison v. State*, 562 So. 2d 827, 827–28 (Fla. 2d DCA 1990). The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*, as modified by *Harrison*.
>
> The Florida Rules of Criminal Procedure allow counsel to file a motion to suppress evidence that was obtained in violation of the Fourth Amendment. *See* Fla. R. Crim. P. 3.190(g). The rules do not, however, provide for motions to suppress evidence that is obtained legally and is otherwise admissible. All relevant evidence is admissible, unless it is substantially outweighed by unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. See §§ 90.402 [and] 90.403, Fla. Stat. (2014).
>
> The court finds that [the claim] fails both prongs of *Strickland*. First, the reason Defendant provides for filing a motion to suppress is not a valid legal ground for a motion to suppress. *See* Fla. R. Crim. P. 3.190(g). In granting the State's motion to compel a buccal swab, the court specifically found that collecting the swab was not an illegal search. If counsel had filed a subsequent motion to suppress the buccal swab, the motion would not have been meritorious because it would have successively raised issues already decided in the court's ruling

25

> on the State's motion to compel a buccal swab. Therefore, the
> court finds that counsel was not deficient for failing to file a
> motion to suppress the buccal swab. *See Holland*, 117 F.3d [ ] at
> 594. Second, the court finds that Defendant was not prejudiced
> by counsel's alleged failure to file a motion to suppress the
> buccal swab. There is no reasonable probability that the motion
> would have been granted if filed because such a motion would
> have been denied as meritless. *See* §§ 90.402 [and] 90.403, Fla.
> Stat. ([2014]). Therefore, [the claim] fails both prongs of
> *Strickland* and is denied.

Trial counsel opposed the prosecutor's motion to compel the buccal swab, and the

trial court granted the prosecutor's motion after determining that probable cause supported

the request for the swab. (Doc. 7-2 at 1152–62) Because a motion to suppress would not

have succeeded, and Morales failed to demonstrate a reasonable probability that the

outcome would change, the post-conviction court did not unreasonably deny the claim.

*Strickland*, 466 U.S. at 694; *Pinkney*, 876 F.3d at 1297.

Sub-claim B is **DENIED**.

**Sub-claim C**

Morales asserts that trial counsel deficiently performed by not moving to suppress

the DNA match based on his DNA placed in the CODIS database during the earlier

unrelated criminal case. (Doc. 1-1 at 12–13) He contends that police unlawfully arrested

him in the earlier case and that, without the DNA match, police lacked probable cause to

arrest him in this case. (Doc. 1-1 at 13) The post-conviction court denied the claim as follows

(Doc. 7-2 at 1128–29) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to file
> a motion to suppress the CODIS match. Specifically,
> Defendant contends that the CODIS match should have been
> suppressed because he was not a convicted offender and his
> DNA was stored in the CODIS database without his consent
> after arrest. The court finds [the claim] to be facially sufficient
> as to both prongs of *Strickland*.

26

The Florida Rules of Criminal Procedure allow counsel to file a motion to suppress evidence that was obtained in violation of the Fourth Amendment. *See* Fla. R. Crim. P. 3.190 (g). The rules do not, however, provide for motions to suppress evidence that is obtained legally and is otherwise admissible. All relevant evidence is admissible, unless it is substantially outweighed by unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. *See* §§ 90.402 [and] 90.403, Fla. Stat. (2014).

As the court explained at the outset of its analysis, the fact that Defendant's DNA profile was collected pursuant to an unprosecuted arrest does not preclude law enforcement from storing his DNA profile in CODIS for further comparison. *See* § 943.325(7)(b), Fla. Stat. (2012). Furthermore, the Defendant's lack of consent to collection of his DNA is immaterial. *See id.* *[S]ee also Maryland v. King*, 133 S. Ct. 1958, 1980 (2013) (holding that Maryland's DNA database statute, which is similar to Florida's DNA database statute authorizing collection of DNA from every arrestee charged with a felony, does not violate the Fourth Amendment because routine DNA collection is not an unreasonable search). Accordingly, if counsel had filed a motion to suppress the CODIS match for the reasons raised by Defendant, the motion likely would have been denied as meritless because the CODIS match does not fall under any grounds for suppression. *See* Fla. R. Crim. P. 3.190(g).

Accordingly, the court finds that [the claim] fails both prongs of *Strickland*. First, the motion that Defendant alleges counsel should have filed would have been a meritless motion. Counsel cannot be ineffective for failing to file a meritless motion. *See United States v. Holland*, 117 F.3d 589, 594 (D.C. Cir. 1997) (holding that counsel cannot be ineffective for failing to file a meritless pleading). Second, there is no reasonable probability that Defendant was prejudiced by counsel's failure to file a meritless motion because a meritless motion, if filed, would have been denied. *See Haliburton*, 691 So. 2d at 470 [ ]. Therefore, [the claim] fails both prongs of *Strickland* and is denied.

Before trial, the prosecutor moved to compel a buccal swab from Morales, and the trial court granted the prosecutor's motion. (Doc. 7-2 at 19–20, 36–37) At trial, the prosecutor introduced into evidence a DNA match based on Morales's DNA from the

buccal swab. (Doc. 7-2 at 681) Because the prosecutor did not introduce into evidence the DNA match based on Morales's DNA in the CODIS database, Morales could not demonstrate a reasonable probability the outcome at trial would have changed if trial counsel had moved to suppress the match. *Strickland*, 466 U.S. at 694.

To the extent that Morales asserts that trial counsel deficiently performed by not moving to exclude the DNA match based on Morales's DNA in the CODIS database to support the suppression of his arrest, the claim is meritless as explained in the ruling in Ground One. Even if trial counsel successfully demonstrated that Morales's arrest violated the Fourth Amendment, an unlawful arrest would not void his conviction. *Gerstein*, 420 U.S. at 119. An unlawful arrest requires only the suppression of a fruit of the unlawful arrest. *Segura*, 468 U.S. at 804. When granting the prosecutor's motion to compel a buccal swab, the trial judge refused to consider the earlier DNA match based on CODIS. (Doc. 7-2 at 32–34) The DNA analyst used the buccal swab to obtain a DNA profile for Morales and matched Morales's DNA from the buccal swab to the DNA from the semen in the crotch of A.D.'s underwear. (Doc. 7-2 at 633–35, 638–40, 681–82, 688) Also, before Morales's arrest, police obtained A.D.'s statements, her underwear, the semen identified on her underwear, the DNA from the semen, and the nurse's observations of A.D. Consequently, none of the incriminating evidence presented at trial derived from Morales's arrest.

Because Morales failed to demonstrate deficient performance and prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 694. *Pinkney*, 876 F.3d at 1297.

Sub-claim C is **DENIED**.

**Sub-claim D**

Morales asserts that trial counsel deficiently performed by not moving to strike a juror for misconduct. (Doc. 1-1 at 13) Morales contends that he told trial counsel that he observed a juror speak into her mobile telephone and heard her state, "I can't wait to convict." (Doc. 1-1 at 13) He further contends that trial counsel did not move to strike the juror because trial counsel did not want to upset the trial judge. (Doc. 1-1 at 13)

The Respondent asserts that the sub-claim is procedurally barred because Morales failed to raise the claim in his brief on post-conviction appeal. (Doc. 7 at 30) In his motion for post-conviction relief, Morales raised the claim. (Doc. 7-2 at 1080) In his brief on appeal, Morales challenged the post-conviction court's denial of his request for an audio recording to substantiate the claim. (Doc. 7-2 at 2158) *State v. Lewis*, 656 So. 2d 1248, 1249–50 (Fla. 1994) (quoting *Davis v. State*, 624 So. 2d 282, 284 (Fla. 3d DCA 1993)), authorizes a post-conviction court to "allow limited discovery into matters which are relevant and material."

By requesting relief on appeal to further pursue his ineffective assistance of counsel claim, Morales fairly presented the claim to the state appellate court. *See, e.g.*, *Henry v. Dep't Corrs.*, 197 F.3d 1361, 1368 (11th Cir. 1999) ("Henry's state-court appeal, which requested only the evidentiary hearing denied by the trial judge, was therefore appropriately modest. It asked for the most he could reasonably have expected from the appeals court — an order vacating and remanding for an evidentiary hearing. Exhaustion should not be construed to mandate more.").

The post-conviction court denied the claim as follows (Doc. 7-2 at 1800–04) (state court record citations omitted and italics in original):

The Defendant claims that counsel was ineffective for failing to move to strike a juror. The Defendant claims that on April 9, 2014, (the second day of trial) he overheard a juror's cellphone conversation in which a juror stated, "I can't wait to convict." The Defendant claims that he told counsel about the juror's statement, but counsel told him not to worry about the juror's statement and failed to notify the court because counsel believed selecting a third jury panel would displease the court.

Based on the context of the claim, it is apparent that the Defendant is claiming that counsel should have requested that a sworn juror be removed and replaced with the alternate juror. When a defendant alleges that counsel failed to request removal of a biased juror, the second prong of *Strickland* is modified such that the defendant must allege and prove that the juror was actually biased. *See Bailey v. State*, 151 So. 3d 1142, 1149 (Fla. 2014) (citing *Troy v. State*, 57 So. 3d 828, 838 (Fla. 2011)). To prove actual bias, a defendant must show that the juror was unable to be impartial. *See Troy v. State*, 57 So. 3d 828, 837 (Fla. 2011). The evidence of bias must be evident from the face of the record. *See id.*

In its response, the State contends that [the claim] should be summarily denied because it fails both prongs of *Strickland*. First, the State contends that counsel was not deficient for failing to move to strike a juror because counsel objected to an unrelated juror issue that arose when an assistant public defender inadvertently discussed the case with the court clerk in the presence of a juror. The State concludes that the Defendant's claim is not credible because counsel actually raised a separate juror issue that had the potential to necessitate a third jury panel, the court instructed the Defendant to stay far away from the jurors during breaks, the Defendant left for lunch with counsel, and the Defendant remained in the courtroom after the jury left for the day. Second, the State contends that, even if the Defendant's claim is true, he was not prejudiced by counsel's failure to move to strike the juror. The State concludes that the Defendant was not prejudiced because the juror was merely conveying his opinion, in reliance [ ] on *Ford v. State*, 374 So. 2d 496, 499–500 (Fla. 1979) (holding, [on] direct appeal, that a juror did not engage in juror misconduct by telling a friend that he was serving on the jury for a murder case).

The court found that the State's reliance on *Ford* was misplaced, because the issue in *Ford* was not ineffective assistance of

counsel, but whether the trial court erred in denying Ford's motion to sequester the jury. *See Ford*, 374 So. 2d at 499. Instead, the legal standard for this claim is set forth in *Bailey*, 151 So. 3d at 1149 (holding that, when a defendant alleges that counsel failed to request removal of a biased juror, the second prong of *Strickland* is modified such that the defendant must allege and prove that the juror was actually biased). The court agreed that the Defendant's opportunity to overhear a juror's conversation was diminished. However, the record did not conclusively refute the Defendant's claim, nor did it conclusively refute the Defendant's alleged conversation with counsel. Therefore, an evidentiary hearing was granted on [the claim].

*Summary of Relevant Evidentiary Hearing Testimony*

Trial counsel, Assistant Public Defender John Nohlgren, testified that at the time of the Defendant's trial in 2014, he had been with the Public Defender's office for almost four years, and had tried approximately fifty cases. Post-conviction counsel acknowledged that Mr. Nohlgren brought copious notes concerning this case to the evidentiary hearing. Mr. Nohlgren testified that he did not recall the Defendant telling him that he overheard a juror on the cellphone state that she "couldn't wait to convict" the Defendant. Mr. Nohlgren testified that issues came up during jury selection. The first venire was stricken within the first ten or fifteen minutes into the selection process because a potential juror made a prejudicial comment. Mr. Nohlgren had no issues with asking the court to excuse the venire and begin the jury selection process from a new venire. Mr. Nohlgren testified that, if the Defendant had raised such an issue after the jurors had been selected from the third venire and sworn, there likely would not have been a need to pick a new jury from a third venire because he would have inquired as to whether the other jurors may have also overheard the cell phone conversation and requested that the juror [be] replaced with an alternate juror. Finally, Mr. Nohlgren testified that he would not be concerned about the judge being upset if the Defendant had informed him of a juror's statement and it had been necessary to select a third jury panel.

Assistant Public Defender Soraida Justiniano, Mr. Nohlgren's co-counsel at trial, testified that she has been an Assistant Public Defender for twenty-four years, and was Mr. Nohlgren's supervisor at the time of the Defendant's trial. Ms. Justiniano testified that she absolutely did not recall the Defendant telling

her that he overheard a juror on the cellphone [state] that [she] "couldn't wait to convict" the Defendant, and that it was something she definitely would have remembered. Ms. Justiniano recalled having a whole jury struck in this case, and reiterated that it was something she would have remembered. Ms. Justiniano testified that even if, hypothetically, the Defendant had come to her with the juror issue he describes, she never would have responded "don't worry about it. We don't want to pick a third jury, it would upset the judge." Ms. Justiniano testified that she would not have been concerned about upsetting the judge or picking a third jury and that the court was never upset with the defense. She also testified that at the time the Defendant alleges the juror issue arose, a jury had been selected which included two alternates, and the remedy would have been to replace the biased juror with an alternate, not to pick a new jury.

The Defendant testified that on the second day of trial, he overheard a conversation by a juror stating that she "couldn't wait to convict." The Defendant testified that he informed Mr. Nohlgren of what he heard, and Mr. Nohlgren responded that he "did not want to go down that line 'cause he did not want to upset the judge," and that he was happy with the jury that had been selected. The Defendant testified that he did not know the juror's name, but that he pointed out the juror to Mr. Nohlgren; a female of middle to late age with brownish red hair. The Defendant acknowledged that his original sworn motion does not allege that Mr. Nohlgren made a statement that he liked the jury that had been selected in response to the Defendant allegedly informing him of the juror's conversation.

*Findings*

Having considered the facts and circumstances of this case, the court finds that the Defendant is not entitled to relief on [the claim]. Contrary to the Defendant's claim, Mr. Nohlgren and Ms. Justiniano testified that they did not recall the Defendant telling them that he overhead a juror saying that she could not wait to convict the Defendant, and if he had come to them with such an issue, they would not have been concerned about upsetting the court. When the court is confronted with conflicting testimony, it is within its province to weigh the credibility of the witnesses to resolve the factual dispute. *See Alston v. State*, 894 So. 2d 46, 54 (Fla. 2004); *Smith v. State*, 697 So. 2d 991 (Fla. 4th DCA 1997); *Foster v. State*, 929 So. 2d 524,

537 (Fla. 2006) ("[T]he trial court has 'the superior vantage point to see and hear the witnesses and judge their credibility.'").

The court finds the testimony of Mr. Nohlgren and Ms. Justiniano to be more credible than the Defendant. Mr. Nohlgren and Ms. Justiniano are seasoned attorneys, who both indicated that they would not have been concerned about upsetting the court to protect the Defendant from juror bias. Further, both counsels specifically recalled that the first jury panel had been stricken, and Ms. Justiniano testified that she definitely would have remembered the Defendant telling her about a potentially biased juror. Although Mr. Nohlgren did not specifically recall the Defendant telling him what he allegedly overheard, Mr. Nohlgren kept copious notes on the case, and did not indicate that he had any notes relating to a conversation about a potentially biased juror. Finally, both Mr. Nohlgren and Ms. Justiniano correctly testified that if the Defendant had approached them regarding a potentially biased juror on the second day of trial, the proper procedure would have been to replace the juror with one of the two alternate jurors that had been selected, not to pick an entirely new jury.

The court finds the Defendant's testimony to be less credible because he provided conflicting testimony under oath. In his sworn motion, the Defendant indicated that upon advising counsel what he overheard, counsel responded "don't worry about it" and "*we don't want to pick a third jury* [because] it would upset the judge." However, at the evidentiary hearing, instead of testifying in accordance with his motion, the Defendant testified that counsel responded that he "did not want to go down that line because he did not want to upset the judge" and [because he] was happy with the jury that had been selected, and made no mention of picking a third jury.[6] Additionally, the Defendant has an interest in the outcome of these proceedings.

[6] Notably, the Defendant testified *after* Mr. Nohlgren and Ms. Justiniano at the evidentiary hearing. The Defendant was therefore privy to their testimonies at the time he testified, and was aware that counsel would not have responded that picking a third jury would upset the judge, because the proper procedure for removing a biased juror from a jury panel at that stage of the trial would have been to replace the juror with an alternate.

> In light of the foregoing, the Defendant's claim fails the first prong of *Strickland* because he has failed to prove that he ever told his attorneys that he overheard a juror saying that they could not wait to convict him. While the Defendant testified that he told his attorneys that he overheard a biased juror, the attorneys' testimonies contradict the Defendant's allegation. The court finds the attorneys' testimonies to be more credible than that of the Defendant for the reasons explained above; there is no reasonable probability that experienced attorneys would be concerned about upsetting the court over a potentially biased juror, and an experienced attorney would have known that the remedy for removing a biased juror is to simply replace the biased juror with the alternate juror, not to pick a whole new jury panel. As the Defendant has failed to demonstrate that counsel was deficient, [the claim] is denied.

The post-conviction court determined that, at the evidentiary hearing, trial counsel testified more credibly than Morales, and a state court's determination of credibility receives deference in federal court. *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("'Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (quoting *Consalvo v. Sec'y, Dep't Corrs.*, 664 F.3d 842, 845 (11th Cir. 2011)).

Because the post-conviction court accurately summarized the testimony by trial counsel (Doc. 7-2 at 1913–14, 1919–22, 1977–78, 1980–81), and Morales fails to demonstrate with clear and convincing evidence that the summary is erroneous, the post-conviction court did not unreasonably determine that Morales never told trial counsel that he overheard a juror state that she could not wait to convict him. 28 U.S.C. § 2254(d)(2) and (e)(1). Even if a juror made the comment, Morales testified that he overheard the comment on the second day of trial after the state court clerk had administered the oath to the jurors. (Doc. 7-2 at 2026) If trial counsel had successfully moved to strike the biased juror, the trial judge would have replaced the biased juror with an alternate juror. Fla. R.

Crim. P. 3.280(a) ("Alternate jurors, in the order in which they are impanelled, shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.").

Because Morales failed to demonstrate deficient performance and prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").

Sub-claim D is **DENIED**.

**Sub-claim E, Sub-claim F, and Sub-claim G**

Morales asserts that trial counsel deficiently performed by not asserting in a motion for a judgment of acquittal ("Sub-claim E"), a motion to arrest the judgment ("Sub-claim F"), and a motion for a new trial ("Sub-claim G"), that the prosecutor failed to prove lack of consent. (Doc. 1-1 at 14)

**Sub-claim E**

Morales asserts that trial counsel deficiently performed by not asserting in a motion for a judgment of acquittal that the prosecutor failed to prove lack of consent. (Doc. 1-1 at 14) The post-conviction court denied the claim as follows (Doc. 7-2 at 1130–32) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to properly argue a motion for judgment of acquittal. Specifically, Defendant contends that children over age eleven are capable of consenting to sexual activity and that counsel failed to raise that argument in his motion for [judgment of acquittal]. Defendant claims that, because the victim in this case was over

age eleven, she was capable of consenting to sexual activity, and he would have been acquitted if counsel understood the law.

To allege a facially sufficient claim for ineffective assistance of counsel based on a failure to move for a [judgment of acquittal], the movant must "state sufficient facts to show that he may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial." *Neal v. State*, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (quoting *Boykin v. State*, 725 So. 2d 1203 (Fla. 2d DCA 1999)) (quotation marks omitted). "[C]ourts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974). "Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel." *Neal*, 854 So. 2d at 670 (citing *Rogers v. State*, 567 So. 2d 483 (Fla. 1st DCA 1990)). When moving for [judgment of acquittal], a defendant "admits all facts adduced in evidence, and the court draws every conclusion favorable to the state which is fairly and reasonably inferable from that evidence." *Spinkellink v. State*, 313 So. 2d 666, 670 (Fla. 1975).

Defendant's claim must be denied because counsel's motion for [judgment of acquittal] would not have been successful even if counsel had articulated the arguments Defendant proposes. Whether or not the victim consented is an issue for the jury to decide, and is not appropriately decided upon a motion for [judgment of acquittal]. *See Coley v. State*, 616 So. 2d 1017, 1029 (Fla. 3d DCA 1993). Thus, the court finds that [the claim] fails both prongs of *Strickland*. First, if counsel had argued upon his motion for [judgment of acquittal] that the State had failed to prove that the victim did not consent, it would have been a meritless argument as to both counts. Notably, consent is not a defense to lewd or lascivious battery. *See* § 800.04(2), Fla. Stat. (2012). Although consent is a defense to sexual battery, the testimony at trial provided the jury with evidence such that a reasonable juror could conclude that the victim did not consent.[3] It would have been inappropriate for the court to make a factual finding that the victim did consent and remove that factual issue from the jury's determination. *See Coley*, 616 So. 2d at 1029. Accordingly, if counsel had argued in his motion for [judgment of acquittal] that the victim consented, the court would have considered it to be a meritless argument

as to both counts. Counsel cannot be deemed ineffective for failing to raise a meritless argument. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010). Second, Defendant was not prejudiced by counsel's failure to argue consent upon [judgment of acquittal] because there is no reasonable probability that Defendant would have been acquitted of either count if counsel had made such an argument. *See Haliburton*, 691 So. 2d at 470. Therefore, [the claim] is denied.

> [3] The victim, who was thirteen years old at the time of the offense, testified that she bought Xanax from the Defendant and drank the vodka that he gave her and her friends while they were trick-or-treating on Halloween. The victim testified that she felt inebriated and that, after all her friends had left, the Defendant made her drink the remaining vodka. The victim did not remember everything clearly, but remembered the Defendant groping her and told him to stop. The victim then remembered being on the ground with her pants and underwear around her ankles. The victim testified that she pulled up her pants, walked to a gas station, and that the police arrived to take her home. The next day, the victim noticed bruises all over her body and called the police. The forensic toxicologist testified she discovered metabolites of Xanax in the victim's blood sample and that that mixing Xanax and alcohol amplifies the effects of alcohol by up to three times its normal inebriating ability, depending on whether the person takes Xanax regularly.

"In moving for a judgment of acquittal, a defendant 'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" *Reynolds v. State*, 934 So. 2d 1128, 1145 (Fla. 2006) (citation omitted). A.D. testified that she told Morales to stop when he pushed her up against a fence and groped her breasts and vagina. (Doc. 7-2 at 417) A.D. remembered sitting by herself on the ground next to the fence with her pants and underwear pulled down to her ankles. (Doc. 7-2 at 418–19)

Because A.D. testified that she told Morales to stop when he groped her breasts and vagina, the prosecutor sufficiently proved that Morales sexually battered A.D. without her consent. § 794.011(1)(a), Fla. Stat. *Statler*, 349 So. 3d at 880 ("The question is whether the State has proven beyond a reasonable doubt, from the admissible evidence, that the defendant did not have a willing partner."). Because a motion for judgment of acquittal based on lack of consent would not have succeeded, the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

Sub-claim E is **DENIED**.

**Sub-claim F**

Morales asserts that trial counsel deficiently performed by not asserting in a motion for an arrest of judgment that the prosecutor failed to prove sexual battery. (Doc. 1-1 at 14) The post-conviction court denied the claim as follows (Doc. 7-2 at 1132–33) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to move for an arrest of judgment when, at the conclusion of the trial, the State failed to prove all the necessary elements to convict Defendant of sexual battery. Defendant contends that he would not have been convicted of sexual battery and might have been convicted of some lesser included offense upon the motion. The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.
>
> A motion for arrest of judgment is a motion that is appropriately filed when the charging document is so fundamentally defective that it will not support a judgment of conviction, the court lacks jurisdiction, the verdict is so uncertain that it does not appear that the jurors intended to convict the defendant of an offense of which the defendant could be convicted, or the defendant was convicted of an offense for which the defendant could not be convicted under the charging document. *See* Fla. R. Crim. P. 3.610. Defendant seems to claim that he was convicted of an offense for which he

could not be convicted because the State did not prove the elements in the charging document.

Defendant should note that his disagreement with the verdict does not mean that the verdict was so uncertain or impossible that a motion for arrest of judgment would have been warranted. The evidence at trial supported a conviction of both offenses charged in the felony information.[4] Thus, the court finds that [the claim] fails both prongs of *Strickland*. First, a motion for arrest of judgment would have been meritless, considering the evidence presented at trial. Counsel cannot be ineffective for failing to file a meritless motion. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010). Second, there is no reasonable probability, under the circumstances of this case, that the motion would have been successful, and the outcome of the trial would have been different if counsel had filed such a motion. *See Haliburton*, 691 So. 2d at 470. Therefore, [the claim] is denied.

> [4] In addition to the evidence of lack of consent discussed in footnote three of this order, the State presented evidence that the Defendant's penis had union with the victim's vagina. First, the victim then remembered being on the ground with her pants and underwear around her ankles, then pulling her pants up. Second, the nurse examiner testified that ejaculate can fall out of the vagina into underwear. Third, Detective Dewitt testified that she collected a buccal swab. Fourth, Detective Cruz testified that he watched Detective Dewitt collect the buccal swab from the Defendant. Finally, a forensic DNA analyst testified that she found and tested a semen stain on the victim's underwear, which matched the Defendant's DNA.

Whether a challenge to the sufficiency of the evidence is cognizable in a motion for arrest of judgment is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure."). Because "'[a] motion in arrest of judgment does not raise the

question of the sufficiency of the evidence, nor does it reach a question of variance between the allegation and proof,'" a motion for arrest of judgment would not have succeeded. *Bybee v. State*, 295 So. 3d 1229, 1232 n.3 (Fla. 2d DCA 2020) (quoting *Clifton v. State*, 79 So. 707, 709 (Fla. 1918)).

Also, sexual battery required proof that Morales, who was nineteen, engaged in sexual activity with A.D., who was thirteen, without A.D.'s consent. § 794.011(4)(a), Fla. Stat. A.D. testified that she told Morales to stop when he pushed her up against a fence and groped her breasts and vagina. (Doc. 7-2 at 417) A.D. remembered sitting on the ground by herself next to the fence with her pants and underwear pulled down to her ankles. (Doc. 7-2 at 418–19) DNA from semen on the crotch of A.D.'s underwear matched Morales's DNA. (Doc. 7-2 at 683–87) A rational jury could reasonably infer from this evidence, viewed in the light most favorable to the prosecution, that Morales sexually battered A.D. without her consent. Because a motion for arrest of judgment would not have succeeded, the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

Sub-claim F is **DENIED**.

**Sub-claim G**

Morales asserts that trial counsel deficiently performed by not asserting in a motion for a new trial that the prosecutor failed to prove sexual battery. (Doc. 1-1 at 14) The post-conviction court denied the claim as follows (Doc. 7-2 at 1133) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to file a motion for new trial. Specifically, Defendant seems to claim that a new trial on count two was appropriate because the evidence introduced at trial did not satisfy the elements of sexual battery. The court notes that, in claiming that the verdict in his case was contrary to the law or weight of the evidence,

> Defendant raises issues that should have been raised on direct appeal. Nevertheless, the court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.
>
> A motion for new trial is appropriate when the verdict is decided by lot, the verdict is contrary to the law or weight of the evidence, or if new evidence would probably change the verdict and could not have been discovered before trial using due diligence. *See* Fla. R. Crim. P. 3.600. The court finds that [the claim] fails both prongs of *Strickland*. Based on the testimony recounted in this order, it is evident that the verdict was not contrary to the law or the weight of the evidence such to prompt counsel to file a motion for a new trial. If counsel had filed such a motion, it would not have been meritorious. Counsel cannot be ineffective for failing to file a meritless motion. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010). Second, there is no reasonable probability that Defendant would have been granted a new trial if counsel had filed such a motion. *See Haliburton*, 691 So. 2d at 470. Therefore, [the claim] is denied.

Whether a jury's verdict is contrary to the law or the weight of the evidence is an issue of state law, and a state court's determination of state law receives deference in federal court. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . ."). As explained in the ruling on Sub-claim F, the evidence sufficiently proved that Morales sexually battered A.D. without her consent. Because a motion for a new trial would not have succeeded, the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

Sub-claim G is **DENIED**.

**Sub-claim H**

Morales asserts that trial counsel deficiently performed by misadvising him not to testify at trial. (Doc. 1-1 at 15–17) He contends that he did not knowingly and voluntarily waive his right to testify because of trial counsel's misadvice. (Doc. 1-1 at 15–17)

41

The post-conviction court denied the claim as follows (Doc. 7-2 at 1805–10) (state court record citations omitted):

> The Defendant claims that counsel was ineffective for misadvising him to not testify and that counsel erroneously promised him that he would end up in prison if he testified. The Defendant contends that, had counsel advised him effectively, that he would have testified to provide a reasonable explanation for why his semen was found on the victim's clothing. Specifically, the Defendant claims that he would have testified that the victim stimulated him by hand until he ejaculated, then the victim placed his semen inside her underwear herself. The Defendant contends that this testimony would have shown that he is innocent of sexual battery.
>
> When a defendant alleges that counsel misadvised him not to testify at trial, the court must consider whether: (1) the defendant voluntarily agreed not to take the stand, and (2) no reasonable attorney would have discouraged the defendant from testifying. *See Simon v. State*, 47 So. 3d 883, 885 (Fla. 3d DCA 2010).
>
> In its response, the State contends that [the claim] should be summarily denied because it fails both prongs of *Strickland*. First, the State contends that counsel was not deficient because he employed reasonable trial strategy in advising the Defendant not to testify. If the Defendant had testified, the State claims that it would have cross-examined him on his prior convictions, as well as a prior, unreported sexual battery which was excluded from the jury in this case. Second, the State contends that the Defendant was not prejudiced by counsel's advice because the court conducted a thorough colloquy with the Defendant which reflects that his decision not to testify was knowingly, intelligently, and voluntarily made. The State further argues that the Defendant's proposed testimony does not undermine confidence in the outcome of the case because his testimony is illogical and would not outweigh the evidence presented at trial.
>
> The court agrees that its colloquy with the Defendant would support a finding that his decision not to testify was knowingly, intelligently, and voluntarily made by the Defendant himself. However, the burden set forth in *Simon* requires this court to additionally determine whether no reasonable attorney would have discouraged the Defendant from testifying. *See Simon*, 47

So. 3d at 885. *See also Hayes v. State*, 79 So. 3d 230, 231 (Fla. 2d DCA 2012) (citing *Simon*, 47 So. 3d at 885). The State seems to contend that counsel employed reasonable trial strategy in discouraging the Defendant from testifying because he wished to conceal the Defendant's prior convictions and a past allegation of sexual battery from the jury. Additionally, the court notes that the Defendant would have necessarily admitted to committing a criminal offense if he had delivered his proposed testimony. Nevertheless, the court observed that findings regarding the reasonableness of counsel's trial strategy are infrequently upheld absent an evidentiary hearing. *See Perez v. State*, 128 So. 3d 223, 227 (Fla. 2d DCA 2013) ("[A] denial of a claim of ineffective assistance based on a finding that counsel was engaging in reasonable trial strategy generally should only be made after an evidentiary hearing.") Therefore, the court granted an evidentiary hearing on [the claim].

*Summary of Relevant Evidentiary Hearing Testimony*

Mr. Nohlgren testified that he had discussed the Defendant's case and had the Defendant practice his trial testimony the day before his trial for about an hour and a half, and that both Mr. Nohlgren and Ms. Justiniano recommended that he not testify because they both felt it would be a major risk for the Defendant to testify. Even during the practice session with his attorneys, the Defendant became hostile with Ms. Justiniano and reacted poorly to her mock cross examination on issues that the defense anticipated the State would cross-examine him on. Mr. Nohlgren testified that he felt the Defendant would display some credibility issues if he testified. Mr. Nohlgren testified that the Defendant had attitude issues, specifically not taking his proposed testimony very seriously, and had problems with his tone, which caused him to not want to put the Defendant on the stand. Mr. Nohlgren testified that the Defendant's proposed testimony was that the Defendant was walking with the alleged victim, and that he became aroused when he allowed the victim to give him a handjob. Mr. Nohlgren considered the Defendant's proposed testimony to be problematic because the Defendant, an adult, would have been admitting to letting a thirteen-year-old child grope him until the point that he was sexually aroused, where the State was seeking a permissive lesser of lewd and lascivious molestation. Mr. Nohlgren further found the Defendant's testimony to be problematic because he would over-explain things; he testified the Defendant has some prior cases which involved inappropriate contact with younger girls, and an arrest for sexual battery, but had not been

convicted. Mr. Nohlgren was concerned that the Defendant's testimony could open a door for the State to present rebuttal testimony as to those prior cases. Mr. Nohlgren testified that he felt that the victim did not come off as credible during the trial and had made inconsistent statements relating to the Defendant's charges, which factored into their decision to advise the Defendant against testifying. Mr. Nohlgren testified that the defense strategy was that the victim was not credible, which would be a major source of reasonable doubt, and to try to explain the DNA issue through sources that were not sexual activity. Mr. Nohlgren testified that ultimately, he and his co-counsel advised the Defendant that the decision whether or not to testify was his, but that they recommended that the Defendant not testify. Mr. Nohlgren testified that he did not tell the Defendant that he would end up in prison if he testified, but explained to the Defendant that he was scoring prison, and therefore if he were convicted he would most likely receive a prison sentence.

Ms. Justiniano testified that she specifically remembered the Defendant coming into the office to practice his testimony in a mock courtroom shortly before the trial, and that the mock session lasted about two hours. She testified that when Mr. Nohlgren conducted the mock direct examination of the Defendant, it "wasn't horrible," but that the Defendant got agitated and angry during cross examination, and his answers would not have benefitted his defense. Ms. Justiniano also testified that the Defendant's testimony would incriminate himself; that he would over-explain things, and the Defendant's story was that the DNA got mixed up because the child was rubbing him, or that he was rubbing the child, which would not sound good to a jury because it involved the Defendant rubbing the child in the privates. Ms. Justiniano testified that she did not think the Defendant would make a good witness, because he was getting agitated even when she was being fairly easy on him compared to what the prosecutor would do at trial, and she did not think he would testify well. Ms. Justiniano testified that the trial strategy in this case was that the Defendant did not commit the offenses; that the Defendant was with a bunch of kids that night, but something was taken out of context. She testified that the State was seeking a permissible lesser of lewd and lascivious molestation. The testimony that the Defendant proposes in his motion, that the child manually stimulated him to the point of ejaculation on her own accord before transferring the ejaculate to the inside of her shorts with her hand would have been problematic, because the Defendant's proposed

testimony would [ ] admit to that lesser permissible offense. Ms. Justiniano testified that her opinion was that the risks associated with the Defendant's testimony outweighed the benefit. Ms. Justiniano testified that ultimately, she and Mr. Nohlgren advised the Defendant that the decision whether or not to testify was his, but that she recommended that the Defendant not testify.

The Defendant testified that he discussed testifying with his counsels at the mock trial and on the day of trial, and that the mock session lasted fifteen to twenty minutes with Mr. Nohlgren asking two or three questions on direct and Ms. Justiniano asking two questions on cross examination. The Defendant testified that his counsels discussed problems with his testimony with him, namely that he was smirking and counsel thought it would make the jury think he was cocky and was not taking it seriously, but not that he was aggressive. The Defendant testified that during his discussions with his lawyers, he never admitted to touching, fondling, or having sexual intercourse with the victim, and his story was that the victim kept bothering him, and he kept pushing her away. The Defendant testified that he would have testified that the victim manually stimulated him to the point of ejaculation, and then transferred the ejaculate to her underwear. However, the Defendant would not acknowledge that such testimony would incriminate him for the offense of lewd and lascivious molestation.

## Findings

This court first turns to the first step of the analysis, to analyze the voluntariness of the Defendant's decision not to testify. *See Simon*, 47 So. 3d at 885. Based on the record and the testimony presented at the evidentiary hearing, the court finds that the Defendant's decision not to testify was voluntary. *See id.* The record reflects that during trial, Mr. Nohlgren requested a short recess to discuss whether the Defendant would testify. Following the recess, the court conducted a thorough colloquy with the Defendant, which he acknowledged during the evidentiary hearing. During the colloquy, the court advised the Defendant that no matter what his attorneys recommended, the decision whether or not to testify was his and his alone. The Defendant affirmed that he understood that it was his decision whether or not to testify, that he would not be testifying, and that his decision was freely and voluntarily made without force or coercion. Further, both Mr. Nohlgren and Ms. Justiniano

testified at the evidentiary hearing that they advised the Defendant that the decision whether to testify was his, and only provided the Defendant with their recommendation.

To the extent the Defendant now claims that his decision was involuntary because he was coerced by Mr. Nohlgren's alleged threat that the Defendant "would end up in prison" if he testified, the Defendant's allegations are in direct conflict with Mr. Nohlgren's testimony at the evidentiary hearing. After considering the testimony presented during the evidentiary hearing and weighing the credibility of the respective witnesses, this court finds Mr. Nohlgren's testimony to be more credible than that of the Defendant. *See Alston*, 894 So. 2d at 54; [ ] *Foster*, 929 So. 2d at 537. Mr. Nohlgren is an experienced attorney, and clearly represented that he did not threaten that the Defendant would end up in prison if he testified, and instead advised the Defendant that he was scoring prison, and would therefore likely receive a prison sentence if convicted. To the contrary, the Defendant's sworn allegations in his motion conflict with his own sworn trial testimony (that he was not forced or coerced) during the court's colloquy. For these reasons, the court finds Mr. Nohlgren's testimony to be more credible than the Defendant's [testimony] and finds that the Defendant's decision not to testify was voluntary. *See Simon*, 47 So. 3d at 885.

This court must now turn to the second point of inquiry and determine whether counsel's advice that the Defendant not testify was nonetheless deficient, meaning that "no reasonable attorney would have discouraged [the Defendant] from testifying." *See Simon*, 47 So. 3d at 885. Based on the record and the testimony presented at the evidentiary hearing, the court finds that counsels' advice that the Defendant not testify was reasonable under the circumstances of this case. *See id.* Mr. Nohlgren and Ms. Justiniano both testified that they felt that it would be a risk for the Defendant to testify in his defense, because he became hostile during cross examination and demonstrated attitude and credibility issues. Specifically, Mr. Nohlgren was concerned that the Defendant did not seem to take his proposed testimony very seriously, and had issues with his tone. Ms. Justiniano testified that the Defendant would over-explain things and became agitated during his mock cross examination where she was being fairly easy on him compared to what the State would do during cross examination at trial. The court finds counsels' testimony to be credible for three reasons. First, this court recalls presiding over the Defendant's

46

trial and had the opportunity to personally observe the Defendant during pretrial and trial proceedings. This court specifically recalls the Defendant demonstrating arrogant, and at times, hostile behavior during those proceedings. Second, the Defendant himself testified that his counsels advised him that his testimony was problematic because he kept "smirking" and was "too cocky," which is consistent with the attitude and credibility issues testified to by Mr. Nohlgren and Ms. Justiniano. Finally, although the Defendant's tone cannot be discerned from a written transcript, this court personally observed the same arrogance from the Defendant during the evidentiary hearing, specifically during cross examination, when the State attempted to refresh his recollection as to a lengthy discussion regarding a permissible lesser of lewd and lascivious molestation. The Defendant's demeanor during cross examination at the evidentiary hearing was reminiscent of his demeanor during the pretrial and trial proceedings.

Further, the Defendant alleges that he would have testified that the victim manually stimulated him to the point of ejaculation of her own accord, and then transferred the ejaculate to the crotch inside her shorts. Both Mr. Nohlgren and Ms. Justiniano testified that such testimony would be problematic because such testimony would admit that the Defendant, an adult, allowed the victim, a thirteen-year-old child, to stimulate him until he was sexually aroused and ejaculated. Additionally, Mr. Nohlgren further explained that he was concerned about the Defendant presenting this testimony because the State was seeking a permissive lesser of lewd and lascivious molestation[,] the Defendant's testimony would essentially admit to that offense, [and] the Defendant had a prior arrest for sexual battery and had prior cases which involved inappropriate contact with younger girls[.] [Mr. Nohlgren] was concerned that the Defendant's testimony could open the door for the State to present rebuttal testimony as to those prior cases.

Considering the Defendant's attitude issues, credibility issues, and the fact that the Defendant would have admitted to lewd and lascivious molestation if he had testified that he allowed the victim to touch his penis until he ejaculated, the court finds that trial counsel's advice not to testify was sound trial strategy aimed at protecting the Defendant from incriminating himself and damaging his credibility in front of the jury. In light of the foregoing, the court finds that counsel was not deficient, as his advice was reasonable, and was voluntarily followed by the Defendant. Because trial counsel's performance was not

deficient, the court need not address prejudice. *See Maxwell*, 490
So. 2d at 932. Therefore, [the claim] is denied.

The post-conviction court determined that, at the evidentiary hearing, trial counsel testified more credibly than Morales, and a state court's determination of credibility receives deference in federal court. *Nejad*, 830 F.3d at 1292. Because the post-conviction court accurately summarized the testimony by trial counsel (Doc. 7-2 at 1842–44, 1962–64, 1966, 1975, 1981–82), and Morales fails to demonstrate with clear and convincing evidence that the summary is erroneous, the post-conviction court did not unreasonably determine that during a mock examination Morales appeared untrustworthy, became agitated and hostile, and behaved poorly. 28 U.S.C. § 2254(d)(2) and (e)(1).

At the post-conviction evidentiary hearing, Morales testified that he would have told the jury that A.D. used her hand to ejaculate him and smeared his semen on the crotch of her underwear. (Doc. 7-2 at 2036, 2039) "A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator, commits lewd or lascivious molestation." § 800.04(5)(a), Fla. Stat. "Neither the victim's lack of chastity nor the victim's consent is a defense to [lewd and lascivious molestation]." § 800.04(2), Fla. Stat. If Morales had testified that A.D., who was thirteen, used her hand to ejaculate Morales, who was nineteen, Morales would have confessed to committing lewd and lascivious molestation, a second-degree felony punishable by fifteen years. §§ 775.082(3)(d) and 800.04(5)(c)(2), Fla. Stat.

Because Morales failed to demonstrate that, under these circumstances, no reasonable counsel would have advised him to decline to testify at trial, the post-conviction court did not unreasonably deny the claim. *Chandler v. United States*, 218 F.3d 1305, 1315

(11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Sub-claim H is **DENIED**.

**Sub-claim I**

Morales asserts that trial counsel deficiently performed by not objecting to the trial judge's misstatement of law at a pretrial hearing concerning the element of consent. (Doc. 1-1 at 17) He contends that the trial judge incorrectly stated that A.D. could not have consented to the sexual battery "[b]ecause of [her] age." (Doc. 1-1 at 17) The Respondent asserts that the sub-claim is procedurally barred because Morales failed to raise the claim in his brief on post-conviction appeal. (Doc. 7 at 45) In his motion for post-conviction relief, Morales raised the claim. (Doc. 7-2 at 1084) However, in his brief on appeal, Morales failed to raise the claim. (Doc. 7-2 at 2124–58)

Because Morales did not invoke one complete round of the state's established appellate review process, Morales failed to exhaust his remedies in state court. *O'Sullivan*, 526 U.S. at 845. If Morales returned to state court to exhaust his remedies, the post-conviction court would deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claim is procedurally barred on federal habeas. *Snowden*, 135 F.3d at 736. Because Morales fails to demonstrate cause and actual prejudice or a miscarriage of justice based on actual innocence (Doc. 12 at 12), the claim is barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Sub-claim I is **DISMISSED** as procedurally barred.

**Sub-claim J**

Morales asserts that trial counsel deficiently performed by not objecting to the admission of the buccal swab at trial because the prosecutor failed to establish a chain of custody. (Doc. 1-1 at 18–21) He contends that the detective who obtained a buccal swab from him misidentified him at trial. (Doc. 1-1 at 18–21)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1135–36) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to object to the introduction of the buccal swab into evidence after the State's witness who collected the swab, Detective Dewitt, misidentified defense counsel as the person from whom she collected the swab. The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.
>
> The unusual circumstances surrounding this particular claim merit discussion. The State's witness, Detective Dewitt, misidentified counsel as the person from whom she collected the buccal swab. Counsel immediately objected to the misidentification. Counsel clarified that he was objecting to the introduction of the buccal swab into evidence based on the witness's inability to properly identify the Defendant. After a discussion outside the presence of the jury, the State proffered the remainder of Detective Dewitt's testimony. Upon the proffer, Detective Dewitt testified that Detective Cruz was with her when she collected the buccal swab. Based on Detective Dewitt's proffered testimony, the State called Detective Cruz to authenticate the buccal swab. Although the record reflects that no parties knew of Detective Cruz's involvement until Detective Dewitt mentioned it in her proffered testimony, the court conducted a *Richardson*[5] hearing and found that the State did not willfully commit a discovery violation. The Court also provided counsel with a courtroom and a court reporter to depose Detective Cruz, to mitigate any prejudice stemming from an unexpected witness.
>
> [5] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).
>
> The court finds that [the claim] is refuted by the record. First, the record demonstrates that counsel did, in fact, object to the

> introduction of the buccal swab after the witness misidentified
> defense counsel as the person from whom she collected the
> swab. Counsel cannot possibly be deemed ineffective for
> actually making the objection Defendant claims counsel did not
> make. Second, because counsel did actually object, there is no
> reasonable probability that counsel's alleged deficient
> performance prejudiced Defendant [ ] to undermine confidence
> in the outcome of trial. The Defendant would have been
> prejudiced if counsel failed to object and the court had actually
> found that Detective Dewitt identified the Defendant when she
> had misidentified counsel as the Defendant. Instead, counsel
> did object, and the court specifically found that Detective
> Dewitt did not identify the Defendant, prompting the State to
> seek alternative methods to authenticate the evidence.
> Accordingly, [the claim] fails both prongs of *Strickland* and is
> denied.

At trial, trial counsel objected when Detective Amy Dewitt misidentified counsel as Morales. (Doc. 7-2 at 1173–75) Also, trial counsel objected to any additional questions by the prosecutor to Detective Dewitt about the misidentification and any discussion by the prosecutor with Detective Dewitt about the misidentification. (Doc. 7-2 at 1177–78, 1193–94) After the prosecutor suggested that either trial counsel or the prosecutor's trial partner could identify Morales as the person from whom Detective Dewitt obtained the oral swab, trial counsel objected because a Florida rule governing professional conduct prohibits an attorney who acts as an advocate from testifying at trial. (Doc. 7-2 at 1190–92)

After the prosecutor announced that she intended to call Detective Cruz to testify, the trial judge prohibited the prosecutor and Detective Dewitt from speaking with Detective Cruz about his testimony. (Doc. 7-2 at 1201–02) Trial counsel objected because the prosecutor had not disclosed any report by Detective Cruz. (Doc. 7-2 at 1201–02) The trial judge determined that any discovery violation was both unintentional and inadvertent and permitted trial counsel to depose Detective Cruz. (Doc. 7-2 at 1202–07) After the deposition, trial counsel objected to Detective Cruz's testimony contending that Detective Cruz

inaccurately described Morales and that the prosecutor relied on an inherently suggestive procedure to obtain Detective Cruz's identification of Morales. (Doc. 7-2 at 1209–12)

Also, after Detective Cruz testified at trial, trial counsel objected to the admission of the buccal swab. (Doc. 7-2 at 1220) Trial counsel renewed an objection to the admission of the buccal swab when the trial judge admitted the buccal swab into evidence. (Doc. 7-2 at 667–68) Because trial counsel repeatedly objected to the admission of both the buccal swab from Morales and the testimony that the prosecutor presented to authenticate the buccal swab, Morales failed to demonstrate both deficient performance and prejudice under *Strickland*. Consequently, the post-conviction court did not unreasonably determine that the record refuted the claim. (Doc. 7-2 at 1135–36)

Sub-claim J is **DENIED**.

**Sub-claim K**

Morales asserts that trial counsel deficiently performed for not objecting to testimony by Detective Cruz who identified Morales at trial. (Doc. 1-1 at 22) He contends that the prosecutor called Detective Cruz to testify only after Detective Dewitt, who obtained a buccal swab from Morales, misidentified Morales and asserts that the prosecutor used an impermissibly suggestive procedure to obtain Detective Cruz's testimony. (Doc. 1-1 at 22)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1136–37) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to object to a State witness's alleged misidentification of the Defendant. Specifically, Defendant claims that Detective Cruz failed to notice that, at the time of his arrest, he was wearing a long, multicolored mullet haircut and, closer to trial, had a short, red haircut with little or no facial hair. The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.

[The claim] is refuted by the record. After a proffer of Detective Cruz's testimony, counsel did object to Detective Cruz's identification of the Defendant. Counsel contended that the identification should be excluded because it was suggestive, and specifically argued that the Defendant's hair looked different and that Defendant did not wear glasses.

Accordingly, the court finds that [the claim] fails both prongs of *Strickland*. First, counsel cannot possibly be deemed ineffective for actually making the objection that Defendant claims he did not make. Second, there is no reasonable probability that the trial would have been different if counsel had more vigorously objected. *See Haliburton*, 691 So. 2d at 470. Having considered counsel's objection and the State's counter argument that they saw the Defendant with glasses and [a] hairstyle is easily changed, the court found that there was not a substantial likelihood of misidentification. Therefore, [the claim] is denied.

Notably, this claim again seems to be more of an attempt to re-litigate issues that should have been raised upon direct appeal. Failure to notice a change of hairstyle or eyeglasses does not diminish the validity of an identification. *See Pierre v. State*, 990 So. 2d 565, 570 (Fla. 3d DCA 2008) (holding that, in an out-of-court photopack identification, it was not improper for an officer to instruct a witness to focus on faces, not hairstyles, because hairstyles are easily altered). Thus, Defendant may wish to note that Detective Cruz's failure to point out the change in Defendant's hairstyle is not the sort of glaring misidentification issue that would require counsel to object.

After the deposition of Detective Cruz, trial counsel objected to the detective's testimony and contended that Detective Cruz inaccurately described Morales (Doc. 7-2 at 1209–12):

[Trial counsel:] Yes, Judge. We do have an objection to Detective Cruz testifying . . . . Our argument is essentially this: that the first identification yesterday, which was a proffer, is most [akin] to an out-of-court identification, even though it was in court; it was not in front of the jury. So, what I

53

have, Judge, is just some case law for everyone —

[Trial court:]   Did you object to us proffering it yesterday?

[Trial counsel:]   The — well, the — the out-of-court identification, Judge, was something that — that they wanted to do, to see what the witness was going to say.

[Trial court:]   Did you say, "Oh, I would rather have it in front of the jury instead of" —

[Trial counsel:]   No, no, no, no.

[Trial court:]   Okay.

[Trial counsel:]   That's not my — my point. My point is that it's, essentially, a prior identification before he's going to be testifying today in front of the jury, or if he is going to testify. And the case I have cited, *Grant vs. State*, is not really relevant on this issue. It mostly just cites the standard for a suggest[ive] identification process.

We do maintain, and we have, and we made the arguments already, that that identification process of bringing somebody into court and asking them to basically point out the defendant, in any trial, is inherently suggestive, especially if it is a detective, who, during his deposition yesterday, did say that defendants generally sit on the outside, Judge. Mr. —

[Trial court:]   Apparently, the first detective didn't know that.

[Trial counsel:]   Well, I guess some are smarter than others. In the deposition, he — Detective Cruz testified that when he saw Morales, it was in the summertime, which is

incorrect; the buccal swab was taken in April.

He testified that Mr. Morales was wearing glasses. [Last night,] I [ ] went and got some records from the jail. Mr. Morales's property records has no glasses. I can show that to the Court, if you'd like.

Now, he also had numerous pretrial[ ] [hearings] in the case, and I know he was — I never saw him wear glasses, ever, not in any jail visit, not in any pretrial [hearings] or anything, use or wear glasses.

The detective also testified that Mr. Morales had red slicked-back hair. We tried to obtain a booking photo from around that time, and they don't exist.

However, when Mr. Morales went into custody, he had a — he had blond hair with a beard, and he maintained that essential appearance the entire time he was in custody, Judge.

And the officer failed to recognize Mr. Morales's beard. He testified that he saw Mr. Morales mostly from behind.

So, our point is this, is that given that there [are] so many discrepancies in Mr. — in the description of Mr. Morales's appearance, from what this detective said he saw or remembers, [this] gives rise to a substantial likelihood that it's a misidentification.

We also argue that it was suggestive, inherently, because there is really, realistically, only one, [maybe] two [ ] people to pick from. He knows Ms. Justiniano is not Mr. Morales, obviously.

And so, our argument is that that was a suggestive identification process. There's a likelihood that it is a misidentification, due to all the discrepancies. And therefore, we're asking the Court to exclude the in-court identification in front of the jury.

[Trial court:]    Thank you. All right. State.

[Prosecutor:]     Judge, well, first of all, let's be clear: It's not on the record that the Defendant had a beard at the time. Because they have a photograph of him taken at some time prior doesn't mean he didn't shave in jail.

The Court and the attorneys all know that defendants are — have access to razors in the jail and routinely change their appearance.

Additionally, I saw the Defendant with glasses today, so he apparently has a set of glasses that he has with [him] — that he has — I don't know about times in the past — but he's got them today.

So, frankly, this type of law that the defense is citing doesn't really go to these types of situations. Every identification is suggestive. The question is, is it unnecessarily suggestive. It's not.

And frankly, it's our position that Detective Cruz's recollection was extremely accurate, having not talked to anyone at all, and not even knowing what he was coming here for.

He knew that the Defendant had on his jail blues, and even recalled that they sat here thirty or forty minutes waiting for a hearing to be completed. So, Judge, all of that they can cross-examine him on. It may go to the weight of his identification, but it certainly doesn't go to admissibility.

[Trial court:]    Okay. Well, certainly, this is an unusual set of circumstances; [that's] a safe way to describe it.

And I — my understanding of how Cruz got involved in this was, that, for the first time yesterday, Detective Dewitt mentioned that Cruz had been with her when she took the DNA, after she misidentified the person from whom she took the DNA. That is, she identified the defense lawyer.

So, then Cruz was brought in. I know he wasn't on the witness list. I don't remember if the State asked, or if I offered, to proffer it. There was no objection by the defense as to the proffer. They probably wanted to see what he would say, which I don't blame them. I then offered the deposition myself, and we all stayed afterwards for the deposition.

I think you have a great deal to raise as a result of the deposition, but I'm not — I'm going to find that there wasn't a *Richardson* violation, since, clearly, the State did not intend to withhold anything, because they didn't realize Cruz was present, and they didn't realize their detective would have a problem identifying the Defendant.

So, there is no *Richardson* violation. I think your argument goes to the — to determine the credibility of Detective Cruz. And, of course, you have many issues to raise regarding that, including, you can raise he was here the day before dropping off evidence. But I'm going to permit it, and I do not find that there is a substantial likelihood of misidentification, under the circumstances. Okay. You have your record; I have mine . . . .

Because trial counsel objected to the admission of testimony by Detective Cruz identifying Morales as the person from whom Detective Dewitt obtained a buccal swab, Morales failed to demonstrate both deficient performance and prejudice under *Strickland*. Consequently, the post-conviction court did not unreasonably determine that the record refuted the claim. (Doc. 7-2 at 1135–36)

Sub-claim K is **DENIED**.

**Sub-claim L**

Morales asserts that trial counsel deficiently performed by not impeaching Detective Cruz, who identified Morales as the person from whom Detective Dewitt obtained a buccal swab. (Doc. 1-1 at 23) Morales contends that "[t]rial counsel knew [that] Morales did not wear or need eyeglasses but failed to act on it to elicit such testimony [and] then present evidence to impeach the questionable identification using that same knowledge." (Doc. 1-1 at 23)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1138) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to impeach State witness Detective Cruz based on a prior deposition statement, in which Detective Cruz testified that Detective Dewitt collected the buccal swab from the Defendant, who was wearing glasses. Defendant avers that he has never worn glasses and contends that Detective Cruz's trial testimony identifying the Defendant is inconsistent with his deposition testimony. The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.
>
> Counsel may impeach a witness by "introducing statements of the witness which are inconsistent with the witness's present testimony." § 90.608(1), Fla. Stat. (2014). Detective Cruz testified in his deposition that the Defendant was wearing glasses. At trial, Detective Cruz provided no impeachable present testimony regarding the Defendant's eyeglasses. An

attempt to impeach Detective Cruz with his prior deposition statement regarding eyeglasses, when he had not testified at trial as to the eyeglasses, would have been an improper impeachment. *See id.*

Accordingly, the court finds that [the claim] fails both prongs of *Strickland*. First, counsel was not ineffective for failing to improperly impeach Detective Cruz. Second, there is no reasonable probability that the outcome of the trial would have been different if counsel had attempted to improperly impeach Detective Cruz. *See Haliburton*, 691 So. 2d at 470. Therefore, [the claim] fails both prongs of *Strickland* and is denied.

Whether trial counsel could have impeached Detective Cruz with his deposition testimony about the eyeglasses is an issue of state evidentiary law, and a state court's determination of state law receives deference in federal court. *Pinkney*, 876 F.3d at 1295 ("[A]lthough 'the issue of ineffective assistance — even when based on the failure of counsel to raise a state law claim — is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that [ ] counsel failed to raise turns on state law.") (citation omitted).

During his deposition, Detective Cruz testified that the person from whom Detective Dewitt obtained a buccal swab wore glasses (Doc. 7-2 at 1299–1300):

|  |  |
|---|---|
| [Trial counsel:] | The person that she took the swab from, what did he look like? |
| [Detective:] | I remember — two things that I can remember about him [ ] were — since we're talking about it. I remember his red hair. I remember he had it shaved, and he had it slicked back. And then, I remember he was wearing glasses. I remember glasses for some reason. |
| [Trial counsel:] | He was wearing glasses? |
| [Detective:] | Yes. |

During trial, Detective Cruz testified that he went with Detective Dewitt to a courtroom, remained seated in the courtroom for forty-five minutes, and observed Detective Dewitt collect the buccal swab. (Doc. 7-2 at 1216–17) Detective Cruz identified Morales as the person from whom Detective Dewitt collected the buccal swab. (Doc. 7-2 at 1217) Detective Cruz did not describe Morales's appearance and did not testify that Morales either wore or did not wear glasses.

"Any party, including the party calling the witness, may attack the credibility of a witness by [i]ntroducing statements of the witness which are inconsistent with the witness's present testimony." § 90.608(1), Fla. Stat. Because Detective Cruz did not contradict his deposition testimony by testifying that Morales did not wear eyeglasses when Detective Dewitt collected the buccal swab, the trial court would not have permitted trial counsel to impeach Detective Cruz with the deposition testimony. *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004) ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must involve a material, significant fact rather than mere details.").

Even if trial counsel could have introduced Detective Cruz's deposition testimony concerning the eyeglasses, other testimony sufficiently authenticated the buccal swab. Detective Cruz testified that he and Detective Dewitt obtained a buccal swab together only one time, he and Detective Dewitt went to a courtroom together to obtain the buccal swab, he and Detective Dewitt sat in the courtroom together for forty-five minutes before obtaining the buccal swab, and he observed Detective Dewitt obtain the buccal swab from Morales. (Doc. 7-2 at 1216–17) Because this other testimony by Detective Cruz established that Morales was the person from whom Detective Dewitt obtained the buccal swab,

Morales failed to demonstrate a reasonable probability that the outcome would have changed. *Strickland*, 466 U.S. at 694. *Mullens v. State*, 197 So. 3d 16, 25 (Fla. 2016) ("The requirement of authentication is 'satisfied by evidence sufficient to support a finding that the document in question is what the proponent claims.' We have indicated that authentication for the purpose of admission is a relatively low threshold that only requires a prima facie showing that the proffered evidence is authentic . . . .") (citations omitted).

Because Morales failed to demonstrate deficient performance and prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim.

Sub-claim L is **DENIED**.

**Sub-claim M**

Morales asserts that trial counsel deficiently performed by not objecting to leading questions by the prosecutor to Detective Cruz. (Doc. 1-1 at 23–24) Morales contends that the prosecutor asked Detective Cruz a leading question by "direct[ing] [the detective] to the precise date [of the event about] which he was testifying." (Doc. 1-1 at 23)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1137) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to object to the State's leading of a witness on direct examination. Specifically, Defendant contends that the State led Detective Cruz by drawing his attention back to April of 2013 before asking him a question. The court finds [the claim] to be facially sufficient as to both prongs of *Strickland*.
>
> Notably, drawing a witness's attention to a certain point of time is the kind of leading question that is permissible upon direct examination in order to develop a witness's testimony. *See* § 90.612(3), Fla. Stat. (2014). It is distinguishable from a true leading question, in which the attorney asks a question in a way that essentially tells the witness the desired answer. *See* § 612.1

Direct Examination, 1 Fla. Prac. Evidence (2016 ed.). Directing a witness's attention to a particular moment in time is merely an introductory technique that allows the witness, opposing counsel, the jury, and the court to understand the circumstances of the question being asked. *See id.*

The court finds, therefore, that [the claim] fails both prongs of *Strickland*. First, the question was the kind of preliminary background question that does not merit a leading objection. *See* § 90.612(3), Fla. Stat. (2014). Accordingly, the court finds that counsel was not ineffective for failing to object to the State drawing Detective Cruz's attention to April of 2013. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010). Second, there is no reasonable probability that the outcome of the trial would have been different if counsel had objected [ ]. *See Haliburton*, 691 So. 2d at 470. The court notes that the typical remedy for a sustained leading objection is that the attorney asking the leading question is merely required to rephrase the question in a way that is not leading. A new trial is rarely required because of a single leading objection. Therefore, [the claim] fails both prongs of *Strickland* and is denied.

Whether an objection to the prosecutor's question directing Detective Cruz to the month and the year when Detective Dewitt obtained the buccal swab would have succeeded is an issue of state law, and a state court's determination of state law receives deference in federal court. *Pinkney*, 876 F.3d at 1295.

During trial, the prosecutor directed Detective Cruz's attention to April of 2013 (Doc. 7-2 at 1216):

| [Prosecutor:] | I'd like to draw your attention back to April of 2013. Did you ever work with Detective Dewitt? |
|---|---|
| [Detective:] | Yes. |
| [Prosecutor:] | And last year, was there ever a time when you came with her to collect a buccal swab, or a DNA sample? |
| [Detective:] | Yes. |

| [Prosecutor:] | Approximately how many times have you and Detective Dewitt gone together to collect a buccal swab? |
|---|---|
| [Detective:] | Once. |

Because the prosecutor's reference to the month and the year when Detective Dewitt obtained the buccal swab intended to orient Detective Cruz to a particular time when the event occurred, an objection to the question would not have succeeded. § 90.612(3), Fla. Stat. ("Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony."). *Happ v. State*, 922 So. 2d 182, 192 (Fla. 2005) ("[A] question is leading when it points out the desired answer.").

Also, on cross examination, trial counsel impeached Detective Cruz with his deposition testimony concerning the date when Detective Dewitt obtained the buccal swab (Doc. 7-2 at 1218–19):

| [Trial counsel:] | Just now on direct, you said that you came in April with Ms. Dewitt to this courtroom? |
|---|---|
| [Detective:] | Yes. |
| [Trial counsel:] | Yesterday, when you were questioned about that experience, you said it happened during the summertime? |
| [Detective:] | Yes. |

A successful objection to the prosecutor's question concerning the month and the year when Detective Dewitt obtained the buccal swab would have forfeited this impeachment on cross-examination. Morales failed to demonstrate that, under these circumstances, no reasonable counsel would have declined to object to the prosecutor's question. *Chandler*, 218 F.3d at 1315.

63

Lastly, even if trial counsel successfully objected to the prosecutor's question concerning the month and the year when Detective Dewitt obtained the buccal swab, other testimony sufficiently authenticated the buccal swab, as explained above in the ruling on Sub-claim L. (Doc. 7-2 at 1216–17) Because this other testimony by Detective Cruz established that Morales was the person from whom Detective Dewitt obtained the buccal swab, Morales failed to demonstrate a reasonable probability that the outcome would have changed. *Strickland*, 466 U.S. at 694. *Mullens*, 197 So. 3d at 25. Because Morales failed to demonstrate both deficient performance and prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim.

Sub-claim M is **DENIED**.

**Sub-claim N**

Morales asserts that trial counsel deficiently performed by not obtaining a ruling on his motion for a judgment of acquittal on the lewd and lascivious battery count. (Doc. 1-1 at 24) He contends that the trial judge only ruled on the motion challenging the sexual battery count. (Doc. 1-1 at 24) The Respondent asserts that the sub-claim is procedurally barred because Morales failed to raise the claim in his brief on post-conviction appeal. (Doc. 7 at 55) In his motion for post-conviction relief, Morales raised the claim. (Doc. 7-2 at 1088) However, in his brief on appeal, Morales failed to raise the claim. (Doc. 7-2 at 2124–58)

Because Morales did not invoke one complete round of the state's established appellate review process, Morales failed to exhaust his remedies in state court. *O'Sullivan*, 526 U.S. at 845. If Morales returned to state court to exhaust his remedies, the post-conviction court would deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claim is procedurally barred on federal habeas. *Snowden*,

135 F.3d at 736. Because Morales fails to demonstrate cause and actual prejudice or a miscarriage of justice based on actual innocence (Doc. 12 at 15), the claim is barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Sub-claim N is **DISMISSED** as procedurally barred.

**Sub-claim O**

Morales asserts that trial counsel deficiently performed by not objecting to comments by the prosecutor during closing. (Doc. 1-1 at 24–27) The post-conviction court summarized Morales's claims as follows (Doc. 7-2 at 1139) (state court record citations omitted):

> Defendant claims that counsel was ineffective for failing to object to inappropriate remarks in the State's closing argument that: (1) improperly shifted the burden of proof, (2) misrepresented the law, (3) mischaracterized the evidence, and (4) improperly appealed to the jurors' sympathy. The court finds [the claims] to be facially sufficient as to both prongs of *Strickland*.

**Burden Shifting**

Morales asserts that trial counsel deficiently performed by not objecting to the following comments by the prosecutor that allegedly shifted the burden of proof to the defense:

> [Prosecutor:]     Again, you have the DNA evidence in this case. The Defendant's semen is in the underwear. How did it get there? There is no other scenario that raises reasonable doubt in this case. The reasonable explanation is that the Defendant had sex with [A.D.] How else did it get there?
>
> (Doc. 7-2 at 1247)
>
> [Prosecutor:]     There are possible scenarios for everything. You can sit there, and you can think of maybe this. You can speculate — and you're going to hear that in the

reasonable doubt instruction: speculation, possibilities. That's not the burden the State has.

They're going to get up here and give you those possible scenarios, but it's not going to raise reasonable doubt, because they're not going to be able to tell you, in a reasonable explanation, a reasonable scenario, how his sperm got into her underwear. They're going to try, but don't let them fool you into thinking that they're proving reasonable doubt.

(Doc. 7-2 at 1256)

[Prosecutor:]     And let's talk just a little bit about that DNA explanation, okay, that this transfer from transfer to transfer to transfer, oh, one or two little sperm. Remember, because the defense — and [trial counsel] went on and on about the rain, and the security guard and all of that.

And I understand his analogy, and I'm sure you do, too. But isn't their explanation for the DNA more like when [trial counsel] was talking to you in jury selection about the shows like CSI, and how they can find one little fiber and trace it back to the perpetrator of the crime? They just find this one little piece that's there, and then you suddenly know who it is?

Isn't that more what their explanation is like? And in jury selection, we all agreed that is impossible. That is not reality based. Isn't that what they're asking you to believe what happened?

That the semen somehow goes from the Defendant's penis, inside of his pants, somehow to the outside of his pants, where, allegedly, [A.D.] is touching; then somehow it gets on her hand; and then, by

> some miracle, she wipes it in the crotch portion of her underwear; and then after all this transfer, these tiny little pieces are still there to be found, after being thrown on the floor of her closet, by the DNA analyst?
>
> Is that really possible, reasonable in this case? Really? It really defies common sense. And here is how you will know it's not reasonable, because you're going to take all of this evidence back with you.

(Doc. 7-2 at 1271–72)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1139) (state court record citations omitted):

> Defendant contends that the State improperly shifted the burden of proof in closing arguments by stating, "How did [the DNA] get there? There is no other scenario that raises reasonable doubt in this case," "don't let [the defense] try to fool you into thinking that they're proving reasonable doubt," and "Is [the defense's explanation] really possible, reasonable in this case?" The court notes that the State's comments regarding the burden of proof were meant to aid the jury in understanding what did and did not amount to reasonable doubt that the Defendant sexually battered the victim. The State argued that the Defendant's DNA was present on the victim's underwear because it fell into the victim's underwear after the Defendant battered her and the victim pulled her pants up and was arguing that an alternative theory, such as the victim placing semen in her underwear by herself, was not reasonable.

Whether an objection to a prosecutor's comment in closing would succeed is an issue of state law, and a state court's determination of state law receives deference in federal court. *Ford v. Norris*, 364 F.3d 916, 918–19 (8th Cir. 2004).

"In closing argument, counsel is permitted to review the evidence and fairly discuss and comment upon properly admitted testimony and logical inferences from that evidence." *Conahan v. State*, 844 So. 2d 629, 640 (Fla. 2003). "The State may not comment on a

defendant's failure to produce evidence because such comments may cause the jury to believe that the defendant has the burden of introducing evidence." *Roberts v. State*, 279 So. 3d 271, 280 (Fla. 1st DCA 2019). "But a prosecutor's comments are not considered impermissible burden-shifting when the comments are invited by defense counsel's closing argument." *Roberts*, 279 So. 3d at 280.

At trial, a DNA analyst testified that she discovered Morales's sperm on A.D.'s underwear. (Doc. 7-2 at 686–87) A nurse testified that sperm could discharge from a vagina onto underwear after vaginal sex. (Doc. 7-2 at 559–60) The prosecutor reasonably inferred from this evidence that Morales engaged in vaginal sex with A.D.

During opening statements, trial counsel disputed that the presence of Morales's sperm on A.D.'s underwear incriminated Morales (Doc. 7-2 at 402–03):

> [Trial counsel:]    Now, the State talked about the DNA on the panties. And remember, when I was talking in jury selection about that story, about the water on the car, and where it could come from, and you know, many of us want to say right away, "Oh, it came from rain. That's where it came from."
>
> I suggest to you that this is one of those cases where you can listen to the evidence and see where this DNA came from. It's the same analogy.
>
> Make sure that it's not the be all to end all. Make sure that it's what the State says it is, and it came from where the State says it came from, and it proves what the State says it does.
>
> I suggest to you that, if you pay close attention to the experts that are going to talk about that, you may come up with a very, very different conclusion as to what happened with that DNA.

During closing, trial counsel argued that Morales's seminal fluid transferred to A.D.'s hand while A.D. "groped" Morales's penis and that A.D. wiped the seminal fluid onto her underwear. (Doc. 7-2 at 878) Because the prosecutor appropriately responded to trial counsel's theory by arguing that no reasonable inference of the evidence supported that theory, an objection would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

**Misrepresentations of Law**

Morales asserts that trial counsel deficiently performed by not objecting to the following comments by the prosecutor that allegedly misrepresented the law:

> [Prosecutor:] There is also going to be the lesser-included offense of battery for sexual battery. Battery has two elements as well. I'll show those to you.
>
> "That the Defendant intentionally touched or struck [A.D.] against her will, or, that he intentionally caused bodily harm to [A.D.]"
>
> If you believe the semen in the underwear and the testimony about the sexual activity that occurred, it's not a battery; it's a sexual battery.
>
> So, while you might find that these two elements are met in this case — and you should, because it's a lesser included of sexual battery — if you find that it was sexual activity between [A.D.] and the Defendant, you're at the level of sexual battery, and you don't need to look at this.
>
> (Doc. 7-2 at 1249–50)

> [Prosecutor:] But she's also a thirteen-year-old girl. She can't have involvement. She can't

consent. And it doesn't matter how many bad choices she made, he cannot have sex with her under the law. She can't consent to it. And that's why he's charged with lewd and lascivious battery.

(Doc. 7-2 at 1258)

[Prosecutor:] So when you go back, please look at these underwear. You will see that giant stain. And that evidence will show you that this man — coupled with all the other evidence you've heard, your common sense, and the law that the judge is going to give you, that this Defendant raped [A.D.]; and in doing so, he committed lewd and lascivious battery, and I ask you to return a verdict of guilty as to both crimes charged.

(Doc. 7-2 at 1273)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1139–40) (state court record citations omitted):

Defendant contends that the State misrepresented the law by saying that, "if you find that it was sexual activity between [victim] and the Defendant, you're at the level of sexual battery," "She can't consent," and "This Defendant raped [victim], and in doing so, he committed a lewd and lascivious battery." The court notes that the State's comment that the victim was thirteen years old and could not consent, is an accurate representation of the law concerning lewd or lascivious battery, and is a valid legal argument as to the charge of sexual battery, given the testimony regarding lack of consent recounted in footnote three of this order. Notably, the State was discussing why the jury should not convict Defendant of the lesser-included offense of battery and had already properly identified the elements of sexual battery.

During closing, the prosecutor identified the elements of both lewd and lascivious battery and sexual battery (Doc. 7-2 at 1245–47):

[Prosecutor:]   Lewd or lascivious battery, Element number one, [A.D.] was twelve years of age or older, but under the age of sixteen years. She was thirteen years old at the time of this offense. That is element one that has been proven beyond a reasonable doubt by the State of Florida.

Element number two, Samuel J. Morales committed an act upon or with [A.D.] in which the sexual organ of Samuel J. Morales penetrated or had union with the vagina of [A.D.] That's element number two. You see that "union" is defined right below that, which means "contact."

So penetration or contact with the vagina of [A.D.] is what the State needed to prove to you in this trial to find the Defendant guilty beyond a reasonable doubt of this charge.

You'll see that below that, that, "Neither the victim's lack of chastity nor the victim's consent is a defense to the crime charged."

For this particular crime — and we talked about this in jury selection — under Florida law, consent is not a defense; consent is not an issue, when it's a thirteen-year-old, there is sexual activity with a nineteen-year-old.

Okay. I'm going to jump to sexual battery. That's the other charge the State brought against the Defendant.

We have three elements on this one. Number one is the same. [A.D.], twelve years of age or older, again, we've proven that element. She was thirteen at the time.

Number two, Samuel J. Morales committed an act upon or with [A.D.] in which the sexual organ of Samuel J.

> Morales penetrated or had union with the vagina of [A.D.]
>
> Number three, the act was committed without the consent of [A.D.] So, for sexual battery, consent is an element.

"Where there is an allegation of improper comments by a prosecutor, [a court] do[es] not consider the comments themselves in a vacuum; rather, [the court] view[s] the allegedly wrongful comments in context." *Wright v. State*, 317 So. 3d 237, 241 (Fla. 3d DCA 2021). Sexual battery requires proof that a defendant engaged in sexual activity without the victim's consent. § 794.011(5)(a), Fla. Stat. "Neither the victim's lack of chastity nor the victim's consent is a defense to [lewd and lascivious battery]." § 800.04(2), Fla. Stat.

A.D. testified that she told Morales to stop when he pushed her up against a fence and groped her breasts and vagina. (Doc. 7-2 at 417) A.D. remembered sitting on the ground by herself next to the fence with her pants and underwear pulled down to her ankles. (Doc. 7-2 at 418–19) DNA from semen on the crotch of A.D.'s underwear matched Morales's DNA. (Doc. 7-2 at 683–87) Because the prosecutor accurately told the jury that lewd and lascivious battery did not require proof of lack of consent, and the prosecutor reasonably inferred from the evidence that Morales engaged in sexual activity with A.D. without her consent, the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

**Mischaracterization of Evidence**

Morales asserts that trial counsel deficiently performed by not objecting to the following comments by the prosecutor that allegedly mischaracterized the evidence:

> [Prosecutor:]   There was a jail call you heard yesterday. Samuel Morales, the Defendant, made that jail call. And in that jail call, he says,

> "I wasn't even there. I don't know how
> my DNA got there. I wasn't even there."

(Doc. 7-2 at 1254)

[Prosecutor:]    If you believe the semen in the underwear
and the testimony about the sexual
activity that occurred, it's not a battery;
it's a sexual battery.

(Doc. 7-2 at 1250)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1140) (state court

record citations omitted):

> Defendant contends that the State mischaracterized the
> evidence by stating that the Defendant said, "I don't know how
> my DNA got there," and improperly referred to the sexual
> activity that occurred, even though sexual activity was not
> discussed in the earlier motion for [judgment of acquittal]. In a
> jail call introduced at trial, the Defendant told a friend that,
> "they say they have DNA evidence, which is odd, because I
> wasn't there." Thus, the Court does not deem the State's
> comment, "I don't know how my DNA got there. I wasn't even
> there" to be a gross mischaracterization of evidence.
> Furthermore, although the Court notes that motion for
> [judgment of acquittal] does not define the parameters of the
> topics that are permissible in a closing argument, the Court
> finds that the record refutes Defendant's claim that sexual
> activity was never discussed in the motion for [judgment of
> acquittal].

During a recorded jail telephone call introduced into evidence at trial, Morales

denied knowing how the crime occurred (Doc. 7-2 at 1224):

[Morales:]    Oh, okay. Well, I got arrested for
something I didn't even know I was going
to be arrested for.

[Female:]    Okay. And what was that?

[Morales:]    Something that happened two years ago,
that didn't happen, so it's kind of odd.
They said that I was somewhere on

73

| | Halloween and did something to somebody when I wasn't there. |
| --- | --- |
| | So — and they said that they have DNA evidence, which is odd, because I wasn't there. So I'm trying to go through my head on how that happened. |
| [Female:] | Okay. And what was the something? |
| [Morales:] | To — think about it. |
| [Female:] | Aww. |

Because the prosecutor reasonably inferred from the recorded telephone call that Morales said that he "[didn't] know how his DNA got there" because "he wasn't even there," an objection would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

In his motion for post-conviction relief, Morales asserted that the prosecutor improperly argued during closing that sexual activity occurred because the prosecutor did not raise the same argument about sexual activity when responding to Morales's motion for judgment of acquittal. (Doc. 7-2 at 1090) Because the prosecutor reasonably inferred from the evidence that Morales engaged in vaginal sex with A.D., the prosecutor did not impermissibly argue that sexual activity occurred. *Conahan*, 844 So. 2d at 640.[2] Because an objection would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

---

[2] Also, in response to the motion for judgment of acquittal, the prosecutor argued that sexual activity occurred. (Doc. 7-2 at 1233–34)

**Sympathy for A.D.**

Morales asserts that trial counsel deficiently performed by not objecting to the following comments by the prosecutor that allegedly elicited sympathy for A.D.:

> [Prosecutor:]      This is what's happening to her right after a trauma. And I even asked Detective Williams — and she agreed with me — her opinion of when she's speaking to the victim, it was as if the — [A.D.] was still trying to figure out herself what had happened that night.
>
>                      And I hope, and I suggest to you, that you understand that response to the trauma that [A.D.] had, and not fault her for anything that she wasn't able to remember, or said. And, now, [the] defense wants to focus on and say that it meant that the victim was being untruthful to the officers.
>
>                      Because she was experiencing a trauma, and she was living it as she's having to explain what happened to her, and she was still trying to figure out for herself what happened to her. And to this day, she has those gaps.
>
>                      (Doc. 7-2 at 1252)
>
> [Prosecutor:]      [A.D.] made herself vulnerable. No question about that. She drank. She took drugs. She made herself vulnerable. She was in a situation where she was with a nineteen-year-old man, and he took advantage of that. He took advantage of that vulnerability.
>
>                      He saw that thirteen-year-old girl, gave her alcohol, let her buy drugs, stayed with her all night until, one by one, all her friends went home, until, finally, he was left alone with her. He took advantage of her.

> And I asked you in jury selection, even if you have a vulnerable victim, does it make any less of a crime? And all of you agreed that it doesn't. So, I'm going to hold you to that a little bit.
>
> She was a vulnerable victim. She put herself in a situation a thirteen-year-old girl should not put herself in, but please don't fault her for that because he chose to take advantage of it. The adult in this situation took advantage of that girl.
>
> And it doesn't make it any less of a rape; it doesn't make it any less of a crime; and it doesn't make him any less guilty.
>
> (Doc. 7-2 at 1254)

The post-conviction court denied the claim as follows (Doc. 7-2 at 1140–41) (state court record citations omitted):

> Defendant contends that the State improperly appealed to the jury's sympathy by stating, "I hope you understand the response to the trauma [victim] had, and not fault her for anything she wasn't able to remember, or said," "[the victim] made herself vulnerable . . . and he took advantage of that vulnerability," "he let her buy drugs, stayed with her all night until . . . finally he was left alone with her. He took advantage of her . . . She was a vulnerable victim."
>
> Before the parties' closing arguments, the Court instructed the jury that closing arguments are not evidence and should not be considered as evidence. Consequently, absent a gross mischaracterization of evidence or the law, failure to object to an inappropriate comment made during closing argument is generally considered to fall within the wide range of professional conduct. *See Linebaugh v. Belleque*, 385 F. App'x 751, 753 (9th Cir. 2010). Furthermore, the Court finds that none of the comments Defendant contends counsel should have objected to were comments that mischaracterized the law or the testimony recounted elsewhere in this order such that an objection would have been appropriate.

> Accordingly, the Court finds that [the claim] fails both prongs
> of *Strickland*. Having considered the context of each comment
> Defendant believes merited an objection, the Court does not
> find any comment to be improper such that counsel should have
> objected. Each comment either accurately reflects the law or
> directly relates to the theory of the State's case. Counsel cannot
> be ineffective for failing to make a meritless objection. *See Ferrell
> v. State*, 29 So. 3d 959, 976 (Fla. 2010). Notably, given the
> Court's instruction on closing arguments to the jury, the effect
> the State's closing comments on the jury's finding of guilt is
> entirely speculative. Furthermore, there is no reasonable
> probability that the outcome of the trial would have been
> different if counsel had made a meritless objection. *See
> Haliburton*, 691 So. 2d at 470. Therefore, [the claim] is denied.

"It is improper for the prosecutor to appeal to the sympathy for the victim where 'the natural effect of which would be hostile emotions toward the accused.'" *Brinson v. State*, 153 So. 3d 972, 979 (Fla. 5th DCA 2015) (quoting *Edwards v. State*, 428 So. 2d 357, 359 (Fla. 3d DCA 1983)). However, "[a] prosecutor's comments are not improper where they fall into the category of an 'invited response' by the preceding argument of defense counsel concerning the same subject." *Walls v. State*, 926 So. 2d 1156, 1166 (Fla. 2006).

During opening statements, trial counsel stated that the evidence would show that the case was "about teenagers acting like teenagers sometimes do, poorly." (Doc. 7-2 at 400) Trial counsel further stated that A.D. provided "multiple versions of what happen[ed] that night," and that "as the story progress[ed] later on, there [was] a memory lapse." (Doc. 7-2 at 401) During cross examination, trial counsel demonstrated that A.D. could not remember whether Morales pushed her against a wooden or metal fence, whether the fence was next to the gas station, whether Morales pushed himself on top of her, and whether she groped Morales's penis. (Doc. 7-2 at 442–44) Trial counsel further demonstrated that A.D. could not remember what she told a police officer at the gas station, what she told her mother at

home, and what she told a police officer, a detective, and a nurse after she reported the crime. (Doc. 7-2 at 453–60)

The prosecutor fairly replied to trial counsel's statement in opening that the case was only about teenagers acting poorly by arguing that Morales, who was nineteen, took advantage of A.D., who was thirteen, intoxicated, and vulnerable. Also, the prosecutor fairly replied to trial counsel's impeachment of A.D.'s credibility during opening and cross examination by arguing that A.D. could not remember details of what occurred because she suffered a traumatic event while intoxicated. *See McClusky v. State*, 311 So. 3d 1016, 1019 (Fla. 1st DCA 2021) ("In opening statements, during cross-examination, and at closing, McClusky's counsel called into question the victim's memory and credibility. There is no doubt that the prosecutor in turn was entitled to include remarks in closing that were based on evidence and reasonable inferences therefrom (including the victim's demeanor on the stand) to rebut the defense's theory about credibility.").

Also, before closing argument, the trial court instructed the jury that "what the attorneys say is not evidence or [the] instruction on the law." (Doc. 7-2 at 840) After closing argument, the trial court further instructed the jury that "the case must be decided only upon the evidence that [the jury] heard from the testimony of the witnesses, and [saw] in the form of the exhibits in evidence," that "[the] case must not be decided for or against anyone because you feel sorry for anyone or are angry at anyone," and that "[the] verdict should not be influenced by feelings of prejudice, bias, or sympathy." (Doc. 7-2 at 913) This Court presumes that the jurors followed the instructions. *Weeks v. Angelone*, 528 U.S. 225, 226 (2000). Because an objection to the comments would not have succeeded, the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

Sub-claim O is **DENIED**.

**Sub-claim P**

Morales asserts that the cumulative effect of trial counsel's deficient performance demonstrates prejudice and entitles him to relief. (Doc. 1-1 at 27) Because no series of errors exists to accumulate, the cumulative error claim is meritless. *Morris v. Sec'y, Dep't Corrs.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Sub-claim P is **DENIED** and Ground Three is **DISMISSED** in part and **DENIED** in part.

**Ground Four**

Morales asserts four ineffective assistance of appellate counsel claims. (Doc. 1-1 at 28) The Court addresses each claim as follows.

**Sub-claim A**

Morales asserts that appellate counsel deficiently performed by not arguing on appeal that the prosecutor failed to prove lack of consent. (Doc. 1-1 at 28) The state appellate court denied the claim in a decision without a written opinion. (Doc. 7-2 at 2231) Morales must demonstrate no reasonable basis for the denial of relief. *Richter*, 562 U.S. at 98.

A.D. testified that, on the evening of the crime, she consumed Xanax and alcohol that Morales provided to her. (Doc. 7-2 at 411, 414) A.D.'s intoxication affected her ability to remember what occurred that evening. (Doc. 7-2 at 414, 416) A.D. remembered that she told Morales to stop when he pushed her up against a fence and groped her breasts and vagina. (Doc. 7-2 at 417) A.D. remembered sitting on the ground by herself next to the fence with her pants and underwear pulled down to her ankles. (Doc. 7-2 at 418–19)

Viewed in the light most favorable to the prosecution, this evidence sufficiently proved that Morales sexually battered A.D. without her consent. § 794.011(1)(a), Fla. Stat. *Statler*, 349 So. 3d at 880; *Reynolds*, 934 So. 2d at 1145. Because the issue on appeal based on lack of consent would not have succeeded, the state appellate court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.

Sub-claim A is **DENIED**.

**Sub-claim B**

Morales asserts that appellate counsel deficiently performed by failing to raise meritorious issues on appeal. (Doc. 1-1 at 28) The Respondent argues that the claim is facially deficient because Morales does not identify any issue that appellate counsel should have raised on appeal. (Doc. 7 at 64) The Respondent further argues that Morales failed to exhaust his remedies in state court by not raising the claim in his petition alleging ineffective assistance of appellate counsel. (Doc. 7 at 64) Morales replies that he raised the claim as the second issue in the brief filed as the Respondent's Exhibit 59. (Doc. 12 at 18)

Exhibit 59 is a *pro se* brief that Morales placed in the hands of prison officials for mailing on March 14, 2018. (Doc. 7-2 at 2240–50) On February 9, 2018, the state appellate court denied Morales's petition alleging ineffective assistance of appellate counsel. (Doc. 7-2 at 2231) The state appellate court construed the brief in Exhibit 59 as a notice to invoke discretionary review in the state supreme court and forwarded the brief to the state supreme court. (Doc. 7-2 at 2236) The state supreme court dismissed the case because the state supreme court lacked jurisdiction to review the state appellate court's decision without a written opinion. (Doc. 7-2 at 2236)

In the second issue of the construed notice in Exhibit 59, Morales asserted that appellate counsel deficiently performed by not arguing on appeal that the trial court erroneously admitted Detective Cruz's testimony identifying Morales as the person from whom Detective Dewitt obtained a buccal swab. (Doc. 7-2 at 2246–48) Morales did not raise this claim in his petition alleging ineffective assistance of appellate counsel. (Doc. 7-2 at 2211–14) Because Morales improperly raised the claim for the first time in a construed notice to invoke discretionary review, and the state supreme court dismissed the discretionary review proceeding for lack of jurisdiction, he failed to fairly present the claim to the state court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) ("In the process of exhausting a claim, the petitioner must comply with all 'independent and adequate' state procedures, or else the petitioner will have procedurally defaulted on that claim.").

If Morales returned to state court to exhaust his remedies, the state appellate court would dismiss the claim as untimely and successive. Fla. R. App. P. 9.141(d)(5) and (d)(6)(c). Consequently, the claim is procedurally defaulted on federal habeas. *Snowden*, 135 F.3d at 736. Because Morales fails to allege facts that demonstrate cause and actual prejudice or a miscarriage of justice based on actual innocence, the claim is procedurally barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Sub-claim B is **DISMISSED** as procedurally barred.

**Sub-claim C**

Morales asserts that appellate counsel deficiently performed by not arguing fundamental error on appeal. (Doc. 1-1 at 28) The Respondent argues that the claim is facially deficient because Morales does not identify any issue that appellate counsel should have raised on appeal. (Doc. 7 at 64) The Respondent further argues that Morales failed to

exhaust his remedies in state court by not raising the claim in his petition alleging ineffective assistance of appellate counsel. (Doc. 7 at 64) Morales replies that he raised the claim as the second ground in the brief filed as the Respondent's Exhibit 57. (Doc. 12 at 18)

Exhibit 57 is a docket sheet for the discretionary review proceeding that the state supreme court dismissed for lack of jurisdiction. (Doc. 7-2 at 2236) Morales did not raise a claim based on appellate counsel's failure to argue fundamental error in his petition alleging ineffective assistance of appellate counsel. (Doc. 7-2 at 2210–14) Because Morales failed to present the claim in the petition, he failed to exhaust his remedies in state court. *O'Sullivan*, 526 U.S. at 845.

If Morales returned to state court to exhaust his remedies, the state appellate court would dismiss the claim as untimely and successive. Fla. R. App. P. 9.141(d)(5) and (d)(6)(c). Consequently, the claim is procedurally defaulted on federal habeas. *Snowden*, 135 F.3d at 736. Because Morales fails to allege facts that demonstrate cause and actual prejudice or a miscarriage of justice based on actual innocence, the claim is procedurally barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Sub-claim C is **DISMISSED** as procedurally barred.

**Sub-claim D**

Morales asserts that appellate counsel deficiently performed by not arguing that trial counsel deficiently performed. (Doc. 1-1 at 28) The Respondent argues that the claim is facially deficient because Morales does not identify any ineffective assistance of counsel claim that appellate counsel should have raised on appeal. (Doc. 7 at 65) The Respondent further argues that Morales failed to exhaust his remedies in state court by not raising the claim in his petition alleging ineffective assistance of appellate counsel. (Doc. 7 at 64–65)

In his reply, Morales fails to identify an ineffective assistance of counsel claim that appellate counsel should have raised and fails to explain how he fairly presented the ineffective assistance of appellate counsel claim to the state court. (Doc. 1-1 at 28)

In his petition alleging ineffective assistance of appellate counsel, Morales did not assert that appellate counsel deficiently performed by not asserting ineffective assistance of trial counsel on direct appeal. (Doc. 7-2 at 2210–14) Because Morales failed to present the claim in the petition, he failed to exhaust his remedies in state court. *O'Sullivan*, 526 U.S. at 845. If Morales returned to state court to exhaust his remedies, the state appellate court would dismiss the claim as untimely and successive. Fla. R. App. P. 9.141(d)(5) and (d)(6)(c). Consequently, the claim is procedurally defaulted on federal habeas. *Snowden*, 135 F.3d at 736. Because Morales fails to allege facts that demonstrate cause and actual prejudice or a miscarriage of justice based on actual innocence, the claim is procedurally barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Also, "[w]ith rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal." *Ellerbee v. State*, 87 So. 3d 730, 739 (Fla. 2012). Consequently, the claim is meritless, appellate counsel did not deficiently perform, and Morales fails to demonstrate prejudice under *Strickland*.

Sub-claim D is **DENIED** and Ground Four is **DISMISSED** in part and **DENIED** in part. Accordingly, Morales's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Morales and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Morales neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the

underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

      **DONE AND ORDERED** in Tampa, Florida on July 25, 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

84